[Criminal No. 874.   Filed May 22, 1939.]

[90 Pac. (2d) 623.]

O. J. HOY, Appellant, v. STATE OF ARIZONA, Respondent.

Mr. W. L. Barnum, for Appellant.

Mr. Joe Conway, Attorney General, and Mr. Albert M. Garcia, Assistant Attorney General, for Respondent.

LOCKWOOD, J.—O. J. Hoy, hereinafter called defendant, was on the 18th day of November, 1937, arrested by the direction of John W. Corbin, then county attorney of Maricopa county, and placed in the county jail. On the afternoon of that day, a complaint was lodged against him before Honorable M. T. PHELPS, a duly elected, qualified and acting judge of the superior court of the state of Arizona, in and for Maricopa county, sitting as a magistrate, charging defendant with having offered a bribe to Corbin, under section 4515, Revised Code of 1928, which reads, so far as material, as follows:

"Public officer; bribery. Every person who gives or offers any bribe to any public officer with intent to influence him in respect to any act, decision, vote, opinion, or other proceeding as such officer, is punishable by imprisonment in the state prison not less than one year nor more than fourteen years; and is disqualified from holding any office in this state. . . . "

A preliminary examination was set for December 2d, and defendant was released upon bail. On the date set the defendant appeared before Judge PHELPS, and waived reading of the complaint and announced ready for hearing, whereupon the state introduced evidence and rested. Defendant moved for the proceedings to be dismissed, and such motion being denied, offered no evidence. Judge PHELPS then entered the following order:

"It appearing to me that the crime of Bribery, a felony, has been committed on or about the 1st day of November, 1937, in Maricopa County, Arizona,

and there is sufficient cause to believe O. J. Hoy guilty thereof, I order that he be held to answer the same, and that he be admitted to bail in the sum of $3500.00.

"Bail bond presented by O. J. Hoy in the sum of and that he be admitted to bail in the sum of $3500.00. $3500.00, bond approved by the Magistrate and defendant O. J. Hoy released.

"M. T. PHELPS

"Judge of the Superior Court of Maricopa County sitting as a Magistrate."

Thereafter the county attorney filed an information, the material portion of which reads as follows:

"O. J. Hoy is accused this 29th day of December, 1937, by the County Attorney of Maricopa County, State of Arizona, by this information, of the crime of Bribery, a felony, committed as follows, to-wit:

"The said O. J. Hoy, on or about the 1st day of November, in the year 1937, and before the filing of this information, at and in the County of Maricopa, in the State of Arizona, did then and there, wilfully, unlawfully, feloniously and corruptly offer a bribe, to-wit, the sum of Four Hundred Dollars in lawful money of the United States of America, to one John W. Corbin, who as said O. J. Hoy then well knew, was then and there the duly chosen, qualified and acting County Attorney of said Maricopa County, with the corrupt intent on the part of him, the said O. J. Hoy, then and there and thereby, wilfully, unlawfully, feloniously and corruptly to influence said John W. Corbin in respect to his acts, decisions, opinions, and proceedings as such County Attorney, that is to say in respect to whether he, the said County Attorney, acting in his official capacity as such, would bring about the arrest and prosecution of said O. J. Hoy for the crimes of violating sections 4671 and 4672 of the Revised Code of Arizona, 1928, by wilfully and unlawfully opening, carrying on, and conducting in said Maricopa County certain unlawful games in violation of said code section 4672, and by wilfully and unlawfully permitting unlawful games to be played and conducted in a gambling house to be maintained and operated by said O. J. Hoy as manager thereof in said Maricopa County, in violation of said code sec-

tion 4672, and with the corrupt intent on the part of him, the said O. J. Hoy, then and there and by means of said bribe, wilfully, unlawfully, feloniously, and corruptly to influence said John W. Corbin as such County Attorney to refrain unlawfully and corruptly from causing the arrest and prosecution of said O. J. Hoy for said crimes of so violating said code sections 4671 and 4672, and from in any other manner interfering with such violations by the said O. J. Hoy of said code section; it being the fact that said O. J. Hoy was then so violating and intending in the future to so violate said code section; . . . ''

Upon the arraignment of the defendant, he moved to set aside the information on two grounds, the first being that section 4515, *supra,* was unconstitutional, in that it was not legally adopted; and the second, that he had not been legally held to answer by a magistrate. These motions were overruled, and defendant then demurred to the information on grounds which we shall consider later. The demurrer being overruled, he entered a plea of not guilty, and the case came on for trial on the 7th day of April, 1938, ￼ fore the Honorable HOWARD C. SPEAKMAN, with a jury, which jury on the 12th day of April returned a verdict of guilty of bribery, as charged in the information. The motion for new trial being overruled sentence was pronounced, and the case is before us on this appeal.

There are some nineteen assignments of error, but we think they should be considered upon the basis of the legal questions raised thereby, and we shall so review them.

The first question is whether defendant received a preliminary examination as required by section 30 of article 2, of the Constitution of Arizona, which reads as follows:

''No person shall be prosecuted criminally in any court of record for felony or misdemeanor, otherwise

than by information or indictment; no person shall be prosecuted for felony by information without having had a preliminary examination before a magistrate or having waived such preliminary examination.''

It is contended that Judge PHELPS, being a judge of the superior court of Maricopa county, to which court defendant was held to answer, had no jurisdiction to conduct a preliminary examination. The argument in support thereof may be summarized as follows: A preliminary examination must be held before a magistrate. Commonly a ''magistrate'' means a justice of the peace or other similar officer, and cannot be taken to include a judge of the court to which a defendant may be held to answer. Judge PHELPS, being a judge of such a court, was not authorized to conduct the preliminary examination, and the defendant was, therefore, not legally held to answer. It is true there are a number of decisions holding, in substance, that the ordinary meaning of the word ''magistrate'' is limited to a justice of the peace, or a similar inferior officer, and there are also cases which hold that it is not proper for a judge of the court in which a defendant is to be tried for a felony to hold him to answer to such court in a preliminary examination. *State* v. *Solomon,* 158 Wis. 146, 147 N. W. 640, 148 N. W. 1095, Ann. Cas. 1916E 309; *Kurtz* v. *State,* 22 Fla. 36, 1 Am. St. Rep. 173.

Our constitution merely provides that the preliminary examination required by its terms shall be held before a ''magistrate,'' without defining the term. If our legislature had not seen fit to determine its meaning, the argument in the cases above cited might well be persuasive. However, the legislature, in chapter 115, Revised Code of 1928, provided very comprehensively and explicitly for the proceedings to be followed in the determination of the guilt or innocence

of one accused of a crime. The first section of this chapter reads as follows:

"4927. Magistrate defined and designated. A magistrate is an officer having power to issue a warrant for the arrest of a person charged with a public offense. The chief justice and the judges of the supreme court, the judges of the superior court, justices of the peace and police magistrates in cities and towns are magistrates."

The proceedings in regard to preliminary examination are set forth in chapter 116, Revised Code of 1928, in much detail. In every portion of that chapter describing any action which is to be taken at a preliminary examination on a charge of felony, the person who is to conduct the examination is described as a "magistrate." We think it would be impossible for the statute to have made it plainer that a judge of the superior court has jurisdiction to conduct a preliminary examination. It is well known that our criminal code is taken to a great extent from that of California. In that state, the law provided, as in Arizona, that judges of the superior courts were magistrates. In the case of *People* v. *Swain,* 5 Cal. App. 421, 90 Pac. 720, 722, the court said:

"It is readily to be observed from the foregoing provisions of our Penal Code that proceedings in criminal cases before a magistrate and those before a justice of the peace are entirely different and distinct, and are designed to accomplish widely different purposes. The proceeding before a justice of the peace acting in his *ex officio* capacity of magistrate is one of the two methods authorized under our system for the inauguration of a prosecution upon ordinary felony charges. The proceeding authorized by section 1426 of the Code involves a trial, of which the justice of the peace as such has jurisdiction under the law, and is, of course, analogous to a trial for a felony in the superior court. Under the law a justice of the peace, when exercising the powers of a magistrate, has

equal authority as such with the justices of the Supreme Court and judges of the superior courts when acting in a similar capacity. The jurisdiction of all those officers, when acting in the *ex officio* capacity in question, extends only to taking and hearing evidence upon the felony charge, and after hearing the proofs making an order either discharging the accused, or holding him to trial for the offense shown by the depositions to have been committed by him. . . . ''

We are of the opinion that the defendant received the preliminary examination required by the Constitution.

The second question is as to the constitutionality of section 4515, *supra*. Apparently the basis for the constitutional objection is that the section is a consolidation of sections 69 and 70 of the Penal Code of 1913, and that its enactment violated section 14 of subdivision 2, article 4, of the Constitution of Arizona, which reads as follows:

''No Act or section thereof shall be revised or amended by mere reference to the title of such Act, but the Act or section as amended shall be set forth and published at full length.''

■■ We have had a somewhat similar objection before us in the case of *Ellery* v. *State,* 42 Ariz. 79, 83, 22 Pac. (2d) 838, 839, and have held that when the legislature, by senate bill number 100, revised and codified the entire statutory law of the state, both penal and civil, under one title which read:

''An Act to Revise, Codify and Adopt a Revision and Codification of the Laws and Statutes of the State of Arizona and Declaring an Emergency,''

that the act was not an amendment of any existing law but the adoption of an entirely new Code as a single act, and that such procedure was constitutional and valid. If the Penal Code, of which section 4515, *supra,* was a part, was an entirely new measure, as we have stated, and not merely an amendment or revision of

some act or a section thereof, we think the constitutional provision above referred to was not applicable thereto.

The next question is as to the sufficiency of the information. It is quite lengthy, but we think a person of common understanding would know that it alleged, in substance, that defendant offered a bribe of four hundred dollars to the county attorney of Maricopa county, with the intention of influencing him to refrain from causing the arrest and prosecution of defendant for violating sections 4671 and 4672, *supra,* which sections defendant was then violating and intending to continue to violate.

The essentials of the sufficiency of an information are found in section 4982, Revised Code of 1928, the formal requisites of which are undoubtedly complied with by the information. The only question is whether by the information above set forth

"the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended, and as to enable the court to pronounce judgment upon a conviction, according to the right of the case."

If the information would show to a person of ordinary understanding what the defendant was accused of, and if the proof of the facts set forth therein would sustain a conviction under section 4515, *supra,* the information is sufficient; otherwise it is not. Let us examine the question.

It is first urged that sections 4671 and 4672, *supra,* may be violated in many different ways, and it is not shown in what particular way defendant was intending to violate them. He overlooks the fact that this information does not charge him with violating the sections in question, but with bribing a public officer to refrain from doing his duty. It is the duty

of the county attorney, under subdivision 2, section 881, Revised Code of 1928, to

"institute proceedings before magistrates for the arrest of persons charged with or reasonably suspected of public offenses, when he has information that such offenses have been committed . . . "

Therefore, no matter in what manner defendant might have been violating sections 4671 and 4672, *supra*, it was the duty of the county attorney to prosecute him therefor, and if he offered that official a bribe to refrain from any or all of such prosecutions, the offense of bribery was committed, and it is not necessary to set forth in what particular method defendant was violating sections 4671 and 4672, *supra*.

It is also urged that section 4515, *supra*, is merely a consolidation of sections 69 and 70, Penal Code of 1913, and that since these last-named sections refer not to "public officers," but merely to "executive officers," it must be assumed, under the rule of *In re Sullivan's Estate*, 38 Ariz. 387, 300 Pac. 193, the "public officers" referred to in section 4515, *supra*, are limited to "executive officers," and that county attorneys do not fall within the latter category. If we are to hold that officers like county attorneys do n' fall within the class of "public officers" referred to in section 4515, *supra*, there is a large class of our public officers who may be bribed with impunity both to briber and bribee. We cannot believe the legislature so intended, but rather that it meant to include by the term "public officer" all public officials not included in the judicial and legislative branches of the government, bribery of a member of these last two branches being covered by chapters 101 and 102, Revised Code of 1928. Other objections are made to the sufficiency of the information, but we think these are the only ones which it is necessary to discuss. We are of the opinion that the information did properly charge the

crime of bribery of a public officer, under section 4515, *supra.*

The next question raised is as to the sufficiency of the evidence to sustain the judgment. Taken in the strongest manner in behalf of the state, as under the rule we must take it, it may be stated as follows: The county attorney, believing that sections 4671 and 4672, *supra,* which prohibited certain classes of gambling, were being persistently and continuously violated by many persons in Maricopa county, and that various public officials were being bribed to connive at such violations, employed the Dunn Bureau of Investigation, of Los Angeles, to make an investigation for the purpose of determining whether this was true, and if it was, it was his purpose to perform his duty, under section 881, *supra,* by instituting proceedings for the prosecution of persons reasonably suspected of such offenses.

Pursuant to this investigation, one John G. Handy was designated by the Dunn Bureau to go to Phoenix and make an investigation. After he entered upon his duties as investigator, he was informed by Roy Merrill, then sheriff of Maricopa county, that defendant was then paying the sheriff money for the privilege of operating an open gambling house. Thereafter Handy went to the defendant's place of business, and introduced himself as a "contact man" for the county attorney's office, and showed him a deputy sheriff commission which had been given to him, Handy, by the sheriff, for the purpose of identifying himself. Defendant at first refused to have anything to do with Handy. But a few days later when the latter again called, defendant stated to him that he had investigated and discovered that Handy was authorized to represent the county attorney, and asked Handy what he thought the county attorney should have for granting to defendant the privilege of running a gambling

establishment. Handy replied that he did not know what it would be worth, but that the sheriff was receiving five hundred dollars a month. Defendant answered that that was what he was supposed to receive but that since business was not good he had asked the sheriff to reduce the amount to four hundred dollars, and that he, defendant, thought that was sufficient for the county attorney also. He asked Handy to return the next day, which the latter did, and upon meeting defendant, without further conversation the latter gave Handy a roll of bills aggregating four hundred dollars, and agreed that they should meet again on the first of November. On that date, Handy again called at defendant's store, and the latter handed him an envelope which contained four one-hundred dollar bills. Defendant further stated that he wished to outline a plan between himself, the sheriff and the county attorney, whereby defendant would have the exclusive concession for operating all the gambling houses in Maricopa county. There was some further conversation, and when Handy finally left, defendant gave him another one hundred dollars and said he would be glad to see him again in regard to the plan which had been under discussion.

This evidence, if believed by the jury as the verdict shows it must have been, establishes beyond a doubt that defendant offered to a man whom he believed to be, and who was, representing the county attorney, a sum of money for the express purpose of bribing that official to fail to do his duty in regard to the prosecution of violations of sections 4671 and 4672, *supra*.

We next consider defendant's contention that the evidence shows that he was induced by the county attorney and his agent to commit the crime charged. This raises the defense, as it is commonly though perhaps rather erroneously called, of "entrap-

ment.'' It is not ordinarily permissible for any person, in order to secure the conviction of another upon a criminal charge, to procure him to commit a crime. But there is a very clear distinction between inducing a person to commit a crime, and setting a trap to catch him in the execution of criminal designs of his own volition. It is the general rule, therefore, that when the doing of a particular act is a crime, regardless of the consent of any person, if the criminal intent originates in the mind of the accused and the criminal offense is completed by him, the fact that the opportunity for the crime is furnished, or that the accused is even aided in the commission of the crime in order to secure the evidence necessary to prosecute him therefor, constitutes no defense. In the cases where it has been urged that the criminal act charged is done at the instigation or solicitation of an agent of the state, the courts almost invariably respond that the purpose of the agent is not to persuade the defendant to commit an offense, but to ascertain if he is already engaged in an unlawful business. It is, therefore, no defense that a person acting as a decoy for the state furnishes the defendant an opportunity to commit the offense. On the other hand, if the criminal intent itself originates in the mind of an agent of the state and the accused is lured into the commission of an offense merely in order to prosecute him therefor, no conviction may generally be had, although the criminality of the act is not affected by any question of consent. 15 Am. Jur., Criminal Law, pars. 335, 336, and cases cited. In the present case the evidence on behalf of the state shows that the county attorney believed, and had reason to believe, that defendant was not only engaged in many violations of the Criminal Code of the state, but that in order to protect himself he was in the habit of bribing different public officials. Believing this, the county attor-

ney, through his agent Handy, gave to the defendant an opportunity to continue in such nefarious practices by offering a bribe to the county attorney, and defendant eagerly embraced the opportunity. If these be the facts, and we must assume the jury believed on competent evidence that they were, there was no entrapment of the defendant.

The instructions of the trial court correctly presented the law of entrapment to the jury in a form as favorable to defendant as was justified.

The next question is whether the court erred in refusing to grant a new trial on account of the prejudicial remarks of the county attorney. These remarks, as set up in the motion for new trial, are substantially that defendant was "an Oriental vice overlord."

"Gentlemen of the jury, are you by your verdict going to compel us to return this nine hundred dollars to the defendant, or are you by your verdict going to allow us to deposit this money in the county treasury to help defray the expenses of these prosecutions?"

That the remarks set forth were improper cannot be disputed, but not all improper remarks by counsel necessarily require a reversal of a case. We have many times laid down the rule that we will not reverse a case on the ground of errors during the conduct of a trial when, upon the whole case, it appears that substantial justice has been done, and that there is no presumption of injury through error. *Lawrence v. State*, 29 Ariz. 247, 240 Pac. 863; *Sam v. State*, 33 Ariz. 383, 265 Pac. 609; *Blackburn v. State*, 31 Ariz. 427, 254 Pac. 467; *Gibson v. Territory*, 8 Ariz. 42, 68 Pac. 540. It does not appear from the record that any objection was made by defendant to his being characterized as an "Oriental vice overlord," and no error, therefore, can be predicated upon such re-

mark. It does appear, however, that counsel for defendant requested the court to instruct the jury to disregard the remarks last quoted in regard to the money offered in evidence being returned to the treasury or to the defendant, and the court said:

"Gentlemen, you are instructed to disregard the remarks of the county attorney with reference to what you would do with the money which has been admitted in evidence. Gentlemen, that is no concern of yours in this case. Therefore, I instruct you to wholly disregard it."

This cured the error unless it affirmatively appears that the remarks were so highly prejudicial that the instruction of the court to disregard them would not be effective. We have held prejudicial remarks by the county attorney a ground for reversal in some cases, and not sufficient in others, and have said that ordinarily the question as to whether improper argument has influenced the verdict must be left to the sound discretion of the trial court on a motion for new trial. *Sage* v. *State,* 22 Ariz. 151, 195 Pac. 533. Upon the whole record, we do not feel that we can say affirmatively that the trial court abused its discretion in refusing to grant a new trial on this ground.

The last question which it is necessary for us to discuss is whether the court erred in refusing to grant a new trial on the ground of newly discovered evidence. The facts in regard to his newly discovered evidence were stated by counsel for the defendant substantially as follows: Upon hearing the evidence of the state at the preliminary examination and consulting with his client it was very evident that the testimony of Roy Merrill, then sheriff of Maricopa county, would be very material in the defense, for the testimony on behalf of the state was to the effect that Merrill had acknowledged he was receiving bribes from defendant herein and had sent the witness Handy

to defendant in order that he might secure a portion of the hush money for the county attorney. It is obvious that an affirmance or denial by Merrill of this testimony was both competent and material for defendant. Merrill at the time was also under arrest for receiving a bribe. Counsel for defendant went to Merrill and asked if the latter would be willing to testify at the trial of defendant, to which the reply was given that since he himself was charged with the commission of the very crime referred to in the evidence of Handy, he would not be willing to testify at the trial of defendant until his own case had been determined.

Counsel for defendant urges that under this situation it would have been futile for him to have subpoenaed Merrill as a witness in defendant's case, for the reason that Merrill would undoubtedly have claimed his constitutional privilege of refusing to testify on the ground that his evidence might tend to incriminate him and that he, therefore, waited until after Merrill had been acquitted of the offense with which he had been charged and then secured his affidavit stating, in substance, that he was now willing to testify on behalf of defendant that Handy's testimony in regard to Merrill's connection with the matter was false.

It seems to us that there are three flaws in the reasoning of counsel for defendant upon this point. In the first place, the testimony which Merrill states in his affidavit in support of a motion for new trial that he would give at such trial, and which presumably he would have given had he been called and compelled to testify at the trial of defendant, being in fact a denial of any criminal conduct whatever, is hardly evidence which would justify him in claiming his constitutional privilege. But even if it would, we think it was the duty of defendant to subpoena and call Merrill to the

stand in order that the privilege might be claimed, or at all events to move the court for a continuance of his case, setting forth the grounds therefor, in order that Merrill's testimony might be available at a later date. *Cochrane* v. *State*, 48 Ariz. 124, 59 Pac. (2d) 658. Defendant did none of these things, and we think that in view thereof it was not error for the trial court to refuse to grant a new trial.

There are other assignments of error, but they are either insufficient under our rules or raise no points worthy of discussion, although they have been considered by us.

Finding no reversible error in the case, the judgment of the superior court is affirmed.

ROSS, C. J., and McALISTER, J., concur.