[No. 2052-1.   Division One.   December 17, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. JEAN EMERSON, *Appellant*.

*Douglas Cook,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Christopher J. Bell, Deputy,* for respondent.

HOROWITZ, J.—Defendant appeals from a conviction for accepting the earnings of a common prostitute. Two ques-

tions are raised: One involves the sufficiency of evidence to support the findings that the earnings accepted by the defendant were from a "common prostitute" within the meaning of RCW 9.79.060; and the second question concerns the propriety of using evidence of a police agent to convict the defendant when, at the request and under the direction of Seattle police officers, the police agent obtained the evidence by becoming a customer of a common prostitute in violation of a Seattle city ordinance forbidding prostitution.

Defendant was charged with the crime of accepting the earnings of a common prostitute. She was convicted at trial largely on the evidence of one Johnny Du, a 25-year-old agent for the vice control unit of the Seattle Police Department. He testified that, pursuant to arrangements with certain Seattle Police Department officers and at their request and direction, on five occasions between March 25, 1972, and April 21, 1972, he entered a single-family dwelling house located at 2602 East Roy Street, Seattle, Washington, and that on each of these occasions defendant was present and introduced him to a different girl at the premises. He testified that on each of these occasions he had sexual intercourse with a girl at that residence after first having paid her $20—the money having theretofore been furnished by the police. On one such occasion, defendant introduced Johnny Du to a girl named Wendy. He then proceeded with Wendy into a bedroom. There he gave Wendy two $10 bills and then engaged in an act of sexual intercourse with her. Wendy and Johnny Du clothed themselves and proceeded to the living room where defendant was present. There Johnny Du observed Wendy hand defendant two $10 bills, which she accepted and placed in the area of her bosom. Johnny Du testified he had not observed Wendy arrive at the house with a purse, nor did he observe her carrying money. The court found "[t]hat Wendy is a common prostitute," and that the $20 paid by Johnny Du to her and then delivered to defendant "was the earnings of a common prostitute." Finding of fact No. 8.

■ Defendant contends the evidence is insufficient to show that Wendy is a common prostitute. She argues, relying on *State v. Thuna,* 59 Wash. 689, 109 P. 331, 111 P. 768 (1910), "[i]ntercourse confined exclusively to one man does not make a woman a common prostitute." However, that rule should be understood in context. In *State v. Thuna* the court approved an instruction defining a common prostitute as

> a woman who offers her body to an indiscriminate intercourse with men. . . . If a woman by words or acts or by any device invites and solicits and submits to indiscriminate intercourse, she is a common prostitute. Whether a woman is a common prostitute is a question of fact which does not depend alone upon the number of persons with whom she has had illicit intercourse, nor does it depend alone upon the question of whether she submits herself for gain. Her avocation may be known or inferred from the manner in which she plies it. The jury are to consider her general conduct and all other circumstances, if any are shown by the evidence in the case, tending to show whether or not she so holds herself out to the public."

*State v. Thuna, supra* at 689-90. *See also State v. Chemeres,* 20 Wn.2d 712, 147 P.2d 815, 150 P.2d 1012 (1944).

The evidence is sufficient to show defendant accepted the earnings of a common prostitute as that term is used in RCW 9.79.060.

■ Defendant next contends the court erred in convicting her on the basis of evidence obtained by the use of police methods grossly contrary to public policy. She argues police agent Du was enabled to obtain the evidence used against defendant in the course of performing an illegal agreement with Seattle police officers to violate the Seattle city ordinance forbidding prostitution—all at city expense and all contrary to public policy. Defendant did not object to the admission of the evidence or move to strike it in order to preserve the error for purposes of review. *State v. Van Auken,* 77 Wn.2d 136, 460 P.2d 277 (1969); *State v. Gefeller,* 76 Wn.2d 449, 458 P.2d 17 (1969);

*State v. Richard,* 4 Wn. App. 415, 482 P.2d 343 (1971). More is here involved, however, than a question of the admissibility of evidence. During final argument at trial, defendant apparently objected, but without success, to the use of the evidence received for the purpose of convicting the defendant. The contention raises the substantive question whether the evidence received furnishes a defense to the charge based on public policy considerations. In the resolution of the question raised, it will be helpful to consider the related, though distinct, defenses of entrapment and due process even though those defenses are not claimed by defendant.

■ The kind of techniques law enforcement agencies use to detect crimes is basically a matter for the judgment of the persons charged with law enforcement responsibility. Police, like all citizens, are nevertheless subject to applicable decisional and statutory restrictions, as well as restrictions imposed by due process clauses, state and federal, and the Fourth Amendment and its corresponding article 1, section 3 of our state constitution. In crimes such as prostitution, homosexuality, liquor sales, narcotics sales and gambling, for crime detection purposes the use of the paid informer, undercover agents and deceitful practices, as well as the practice of actually aiding and abetting the commission of a crime by others, or even joining in a conspiracy for that commission, are well known. These practices, when part of a scheme of crime detection by law enforcement officers, have not ordinarily been held illegal. *See United States v. Wray,* 8 F.2d 429 (N.D. Ga. 1925); *Nelson v. Roanoke,* 24 Ala. App. 277, 135 So. 312 (1931), *cert. denied,* 223 Ala. 317, 135 So. 314 (1931); *Hoy v. State,* 53 Ariz. 440, 90 P.2d 623 (1939); *People v. Amata,* 270 Cal. App. 2d 575, 75 Cal. Rptr. 860 (1969). *See generally* Donnelly, *Judicial Control of Informants, Spies, Stool Pigeons, and Agent Provocateurs,* 60 Yale L.J. 1091 (1951); Rotenberg, *The Police Detection Practice of Encouragement,* 49 Va. L. Rev. 871 (1963); 21 Am. Jur. 2d *Criminal Law* §§ 143, 144 (1965);

22 C.J.S. *Criminal Law* § 45(2) (1961); 4 F. Wharton, *Criminal Evidence* § 741 (13th ed. C. Torcia 1973).

The commission of crimes by police officers and their agents in the course of meeting the need for crime detection has, however, created some concern. There are cases refusing to exonerate police officers of criminal responsibility for the commission of crime even though the crime was committed in the course of efforts to detect the commission of crime by others. *Reigan v. People,* 120 Colo. 472, 210 P.2d 991 (1949); *Commonwealth ex rel. Shea v. Leeds,* 9 Phila. 569 (Quarter Sess. 1872); *Rex v. Petheran,* 65 Can. Crim. Cas. Ann. 151 (1936). As stated in *Commonwealth ex rel. Shea v. Leeds, supra* at 570, "It was never intended that a man should violate the law in order to vindicate the law." On the other hand, there are cases holding that police officers under such circumstances should be exempt from criminal sanctions as a matter of public policy when they violate the law in the course of their crime detection duties. *Lilly v. West Virginia,* 29 F.2d 61 (4th Cir. 1928); *State v. Gorham,* 110 Wash. 330, 188 P. 457, 9 A.L.R. 365 (1920). In the Model Penal Code § 3.02, comment at 9 (Tent. Draft No. 8, 1958), it is stated that a "speed limit may be violated in pursuing a suspected criminal." Exoneration of a police officer who commits a crime in the course of crime detection would appear in principle to be a matter of actual or presumed legislative intention. *See Sherman v. United States,* 356 U.S. 369, 2 L. Ed. 2d 848, 78 S. Ct. 819 (1958); *Nardone v. United States,* 302 U.S. 379, 82 L. Ed. 314, 58 S. Ct. 275 (1937); *Sorrells v. United States,* 287 U.S. 435, 77 L. Ed. 413, 53 S. Ct. 210, 86 A.L.R. 249 (1932).

The criticism of police conduct and the effect to be given thereto has been the subject of considerable discussion in connection with the definition of entrapment in criminal cases. The majority view in entrapment cases treats police conduct as a matter of secondary importance unless the conduct serves to entrap an unwary defendant into committing a crime he would not otherwise have committed. As the cases from the Supreme Court of the United States

and from the State of Washington treat the matter, if the conduct merely provides the occasion for the commission of the crime by one who is predisposed to commit it, then entrapment is no defense. *United States v. Russell,* 411 U.S. 423, 36 L. Ed. 2d 366, 93 S. Ct. 1637 (1973); *Sherman v. United States, supra; Sorrells v. United States, supra; State v. Waggoner,* 80 Wn.2d 7, 490 P.2d 1308 (1971); *State v. Curry,* 70 Wn.2d 383, 422 P.2d 823 (1967); *State v. Moore,* 69 Wn.2d 206, 417 P.2d 859 (1966).

It would therefore follow, under the majority view, that unethical police conduct alone does not suffice to warrant the application of the entrapment defense. Thus, *United States v. Russell, supra* at 435, states:

> Several decisions of the United States district courts and courts of appeals have undoubtedly gone beyond this Court's opinions in *Sorrells* and *Sherman* in order to bar prosecutions because of what they thought to be, for want of a better term, "overzealous law enforcement." But the defense of entrapment enunciated in those opinions was not intended to give the federal judiciary a "chancellor's foot" veto over law enforcement practices of which it did not approve.

There is support for the view that the defense of entrapment should be more liberally applied than the majority rule permits. *See* dissenting opinions in *United States v. Russell, supra.* There is also support for the view that, whether or not entrapment is involved, police misconduct used to obtain a conviction may constitute a defense to the charge. *See Greene v. United States,* 454 F.2d 783 (9th Cir. 1971). Concepts of public policy and due process utilized by the proponents of each of the views described call for the balancing of the public policies involved and a choice of a public policy to be enforced. Public policy requires that crime be detected and its perpetrators punished. Public policy also requires that a defendant be fairly treated. Practical considerations require that, in the performance by police of crime detection duties, at least some deceitful practices and "a limited participation" in unlawful practices be tolerated and recognized as lawful. It is also part of

public policy that competing public policies involved be reconciled to the end that these policies may be used without unnecessarily impairing the vigor of each. Such a reconciliation may be at least implicity involved in arriving at due process principles. In *United States v. Russell, supra,* defendant, in addition to claiming entrapment, argued that the government agent became so involved in criminal activity by supplying a scarce essential ingredient that a criminal prosecution of the defendant for manufacturing an illegal drug would violate the fundamental principles of due process. In answer, the court pointed out that the government agent, whose conduct was the subject of criticism, violated no federal statute or rule and committed no crime in infiltrating the defendant's drug enterprise. The court noted:

> Thus in drug-related offenses law enforcement personnel have turned to one of the only practicable means of detection: the infiltration of drug rings and a limited participation in their unlawful present practices. Such infiltration is a recognized and permissible means of investigation . . . For an agent will not be taken into the confidence of the illegal entrepreneurs unless he has something of value to offer them. Law enforcement tactics such as this can hardly be said to violate "fundamental fairness" or "shocking to the universal sense of justice," . . .

*United States v. Russell, supra* at 432. Nevertheless, the court said at page 431:

> While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, . . . the instant case is distinctly not of that breed. . . . The law enforcement conduct here stops far short of violating that "fundamental fairness, shocking to the universal sense of justice," mandated by the Due Process Clause of the Fifth Amendment.

The above-quoted due process standard of "fundamental fairness, shocking to the universal sense of justice"—at

least implicitly the product of a reconciliation of competing public policies—should also be usable in defining public policy when the problem of defining the latter concept is divorced from the problem of defining due process. This conclusion is supported in principle by decisions declining to hold illegal the use by police of the paid informer, undercover agents, deceitful practices, and even "a limited participation" in the unlawful activities of those whose criminal practices are under investigation. *United States v. Russell, supra.*

In the instant case, police agent Johnny Du did not instigate or solicit the commission of the crime for which defendant was convicted so as to provide defendant with a defense of entrapment or with a claim her rights to due process were violated. *State v. Waggoner, supra; State v. Curry, supra; State v. Moore, supra; United States v. Russell, supra.* In the course of performing his crime detection duties, undertaken at the request and under the direction of Seattle police officers, he committed acts which, if performed by one who was not engaged in crime detection duties, would have been in violation of the Seattle city ordinance forbidding prostitution. Those acts did not violate any public policy embodied in the state statute dealing with prostitution. RCW 9.79.060. *See State v. Cashaw,* 4 Wn. App. 243, 480 P.2d 528 (1971). We may assume arguendo the ordinance does not impliedly exempt the violations described. Although our opinion should not be misconstrued as a moral endorsement of the means employed to obtain the evidence used, nevertheless, in light of a public policy standard even less demanding than that of "fundamental fairness, shocking to the universal sense of justice," we cannot say the trial court erred in using the police agent's evidence in convicting the defendant.

Affirmed.

CALLOW, J., concurs.

WILLIAMS, J. (concurring specially)—Ms. Emerson's two assignments of error challenge the finding of the court as to

what transpired and the refusal of the court to exclude the evidence of Mr. Du as a matter of public policy because the money he used to finance the five occasions was supplied by the police. As to the first assignment, there is substantial evidence to support the finding. As to the second, I believe that it was improper for the police to furnish money to be used in this way. However, rather than exclude Mr. Du's testimony because the conduct of the police is shocking, *Ker v. California,* 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963), I believe resolution of that problem is best left to administrative or legislative action.