[No. 11988–5–I.   Division One.   August 15, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. RONALD
PRINCE MYERS, SR., *Appellant.*

*Gary Bass,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *J. Robin Hunt* and *Deborah Phillips, Deputies,* for respondent.

DURHAM, A.C.J.—Ronald Myers appeals his conviction for violation of the Uniform Controlled Substances Act, RCW 69.50.401(a), claiming the trial court erred in denying his motion to suppress evidence.

On October 7, 1981, King County Police obtained a search warrant for Myers' residence, signed by a Seattle District Court judge, based upon the belief that the residence contained heroin. Myers' house was fortified with ironwork over the windows and a locked, wrought–iron gate on the front door. The iron gate and front door were a few inches apart, in the same doorframe, so that an occupant could open the door while the outer gate remained locked. Due to this fortification, the officers believed that if they announced their identity and purpose, or tried to force entry to execute the search warrant, the occupants would destroy the evidence. The officers were also concerned for their safety because an informant had seen Myers answer the front door while carrying a handgun. Consequently, Officers Oswald and Gross prepared a fictitious warrant for Myers' arrest for his failure to appear for traffic violations. They filled in relevant data on a Seattle District Court warrant form. On the Judge/Commissioner signature line, Officer Gross signed the name "W. L. Farley".[1] The officers intended that Myers open the gate voluntarily in response to what appeared to be an authentic arrest warrant.

Officers Gross and Tripp served the warrants on Myers on the same day. Myers opened his front door to speak

---

[1]There are no judges or commissioners by this name in Seattle District Court.

with the officers but the gate remained locked. The officers identified themselves as King County Police with a warrant for Myers' arrest and they showed him the false document through the gate. Myers said the warrant was a mistake, opened the iron gate, and invited the officers into his house to clarify the error.

When Myers opened the gate, Tripp and Gross signaled five surveillance officers to move in and then advised Myers that they had a search warrant for the premises. While the officers were still standing on the porch, Myers responded that he had nothing to hide and, again, invited Tripp and Gross to enter. As a result of the subsequent search, Myers was charged with unlawful possession with intent to manufacture or deliver heroin.

At a hearing on Myers' motion to suppress evidence of the heroin, Myers argued that the arrest warrant ruse usurped the court's function and violated his constitutional rights. The trial judge denied the motion, stating that the police had proper authority pursuant to a valid search warrant to enter Myers' home, and that the fictitious arrest warrant merely served as a means of gaining peaceful admittance. In a stipulated trial to the court, the judge found Myers guilty as charged. Myers assigns error to the use of the ruse and the adequacy of the affidavit.

## THE RUSE

The use of subterfuge to gain entry into a criminal suspect's home is an acceptable alternative to the knock and wait rule. *State v. Ellis,* 21 Wn. App. 123, 584 P.2d 428 (1978); RCW 10.31.040. Generally, the police must knock and announce their authority and purpose to gain entry into a residence. *Ellis,* at 124–26. If admission is refused, the officers may use force to enter. A ruse is permissible if it accomplishes its purpose without the use of force. *Ellis,* at 125. As a matter of policy, subterfuge is condoned because it obviates the use of force, which imperils the safety of officers, suspects, citizens and property. *See State v. Dugger,* 12 Wn. App. 74, 78, 528 P.2d 274 (1974). Fur-

thermore, the practical demands of effective law enforcement require artifice to ferret out covert criminal activities, especially in the enforcement of vice laws.[2] As Justice Traynor said of exceptions to the knock and wait rule:

> Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with [the knock and wait statute]. Moreover, since the demand and explanation requirements . . . are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest [or search] frustrated had he demanded entrance and stated his purpose.

*People v. Maddox,* 46 Cal. 2d 301, 306, 294 P.2d 6, *cert. denied,* 352 U.S. 858 (1956).

Although Myers concedes that ruses are permissible, he argues that the use of the fictitious arrest warrant violated due process. He first asserts that the "issuance" of the warrant was a usurpation of judicial authority.

We find this argument unconvincing because the officers never intended to create an effective arrest document nor did they actually arrest Myers with the fictitious warrant. The police merely created the *appearance* of an effective document. Once the ruse proved successful and the iron gate was opened, the police abandoned the facade and executed their valid search warrant. Inasmuch as the nature of a ruse is to create a false impression, and it is constitutionally permissible to do so, the limited use of the fictitious arrest warrant did not usurp judicial authority.

Myers next contends that the officers' use of the bogus

---

[2] "'[I]t is all but impossible to obtain evidence for prosecution save by the use of decoys. There are rarely complaining witnesses. The participants in the crime enjoy themselves. Misrepresentation by a police officer or agent concerning the identity of the purchaser of illegal narcotics is a practical necessity.'" *Lewis v. United States,* 385 U.S. 206, 210 n.6, 17 L. Ed. 2d 312, 87 S. Ct. 424 (1966) (quoting Model Penal Code § 2.10, comment at 16 (Tent. Draft No. 9, 1959)).

arrest warrant was fundamentally unfair when examined in light of the principles enunciated in *State v. Emerson,* 10 Wn. App. 235, 517 P.2d 245 (1973). In *Emerson,* an agent for Seattle's vice control unit engaged in sexual intercourse with a prostitute while investigating Emerson for the crime of accepting the earnings of a common prostitute. Although we criticized the crime detection technique employed, we held that the agent's conduct did not violate principles of fundamental fairness because the agent did not violate any public policy embodied in the prostitution statute.

Relying on *Emerson,* Myers invokes the general concepts of fundamental fairness, due process, and public policy to challenge the State's action here. His arguments are simply too vague. Concepts such as fundamental fairness and due process elude precise definition under these facts. We implicitly recognized this problem in *Emerson,* when we concluded that, at best, fundamental fairness could only be determined by what is "shocking to the universal sense of justice". *Emerson,* at 241. What is "shocking" engenders no more of an objective standard than does "fairness."[3] Consequently, we find the use of further definitions of this type to be of no assistance.

Myers' argument is better considered by a direct comparison with the facts in *Emerson.* There, we permitted, with reservation, an agent's sexual intercourse with a prostitute for purposes of crime detection. Under the circumstances, we held that this conduct was not shocking. Here, a fictitious arrest warrant was used to gain peaceful access into a suspect's residence in order to execute a valid search warrant. This certainly pales by comparison to the activity in *Emerson.* Thus, we believe that the ruse was not fundamentally unfair.

Finally, Myers argues that this ruse was impermissible because it was unlike the kind of deception heretofore per-

---

[3]*Webster's Third New International Dictionary* 2099 (1969) defines "shocking" as "extremely startling and offensive: novel and distasteful through being or appearing immoral, horrifying, immoderate, reprehensible".

mitted by the courts. He asserts that only ruses which affirmatively misrepresent identity[4] are permitted. Specifically, Myers contends that the deception used here was impermissible because it misrepresented the officers' authority, not their identity.

This is a distinction without a difference. Nothing in the cases Myers cites suggests that such categorization is valid. This argument is nothing more than semantic sleight of hand. We conclude that the use of the fictitious arrest warrant was constitutionally permissible and, therefore, the trial court properly refused to suppress the evidence.[5]

### THE AFFIDAVIT

The second question before us concerns the adequacy of the supporting affidavit for the search warrant. The affidavit, sworn to by Officer Oswald, stated in pertinent part:

> That on the 6th day of October, 1981, your affiant received information from a confidential informant that has proven reliable; that this informant has been associated with the King County Police Drug Enforcement Unit for the past five months; that the said informant has been reliable on five separate occasions in accomplishing purchases . . . That the said informant has also

---

[4]Myers contends that permissible ruses include, for example, misrepresentations by undercover officers that they are narcotics buyers, *State v. Huckaby*, 15 Wn. App. 280, 549 P.2d 35 (1976), prostitutes' customers, *State v. Emerson, supra*, or telephone repairmen, *Smith v. United States*, 357 F.2d 486 (5th Cir. 1966).

[5]Although we decide this case on the acceptability of the ruse, the evidence would also support a finding that the entry was consensual. *See State v. Young*, 76 Wn.2d 212, 455 P.2d 595 (1969); *State v. Jones*, 15 Wn. App. 165, 547 P.2d 906 (1976). The ruse was used merely to open the gate. While still standing outside Myers' home, the officers identified themselves and announced that their purpose was to execute a valid search warrant. Myers invited them in. Although Myers testified he did not consent to the entry to execute the search warrant, it is the exclusive province of the trier of fact to review witness' testimony and exercise its discretion according it the appropriate weight. *In re Estate of Gallinger*, 31 Wn.2d 823, 829, 199 P.2d 575 (1948); *State v. Smith*, 31 Wn. App. 226, 228, 640 P.2d 25 (1982). The trial court apparently chose to disbelieve Myers' testimony. Even if Myers refused admittance to the police, however, the facts and circumstances show that the officers complied with the knock and wait rule and they then had the right to forcibly enter the residence. RCW 10.31.040.

provided information leading to (1) search warrant on the 23rd day of September, 1981, resulting in (2) felony arrests and a seizure of marijuana and heroin; that the said case is still pending at this time;

. . . that during the 6th day of October, 1981, the said informant was at the address 3207 South Byron Street, Seattle, King County, Washington; that the said residence was at that time occupied by a black male known to the said informant as Ron Myers and his family; that the said informant observed a quantity of material thought to be by the informant heroin . . .

That the said informant is familiar with heroin through use and prior associations with users and dealers;

Myers argues that the affidavit was too conclusory to prove probable cause or establish the informant's reliability. We conclude that the affidavit, based on hearsay, set forth sufficient facts and circumstances underlying the informant's conclusion to enable a neutral and detached magistrate to determine that both the information and the informant were reliable. *See Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).[6]

At the first step, the magistrate accepts the veracity of the informant but exercises his judgment independently on the issue of probable cause. *State v. Higby,* 26 Wn. App. 457, 462, 613 P.2d 1192 (1980). Search warrants will not be read hypertechnically. *State v. Higby, supra.* All that is required is that the magistrate be provided with a reference point by which to determine the probability of criminal activity. *State v. Partin,* 88 Wn.2d 899, 567 P.2d 1136 (1977); *State v. Seagull,* 95 Wn.2d 898, 632 P.2d 44 (1981). A magistrate is then entitled to make commonsense infer-

---

[6]The United States Supreme Court recently overruled the *Aguilar–Spinelli* 2-pronged test in *Illinois v. Gates,* __ U.S. __, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983) and established the more flexible "totality of the circumstances" test. We need not consider the application of *Gates* to this case, inasmuch as the supporting affidavit met the more rigorous standards of the *Aguilar–Spinelli* test. *See State v. Woodall,* 100 Wn.2d 74, 78 n.2, 666 P.2d 364 (1983).

ences from the facts and circumstances contained in the affidavit. *State v. Larson,* 29 Wn. App. 669, 630 P.2d 485 (1981).

The affidavit states that the informant was at Myers' home on October 6, 1981, where he saw a quantity of material that appeared to the informant to be heroin. Myers even represented to the informant that it was heroin. In addition, the affidavit notes that the informant was familiar with heroin from personal use and his prior associations with users and dealers. These facts are sufficient to justify a magistrate's conclusion that the police would probably find heroin at Myers' home on the day after they received the informant's tip.

The second step of the *Aguilar–Spinelli* test requires the magistrate to determine the inherent credibility or reliability of the informant on the particular occasion. The Washington Supreme Court stated that when an affidavit is viewed as a whole, in a nontechnical manner, it must not be conclusory and must bear enough information to conclude reasonably that a violation existed. *State v. Fisher,* 96 Wn.2d 962, 966, 639 P.2d 743, *cert. denied,* 457 U.S. 1137 (1982). In *Fisher,* the court approved an affidavit which provided general facts concerning the informant's reliability:

> The informant is reliable in that he/she has given information regarding drug trafficing [*sic*] and use in the past which has proven to be true and correct.
> The informant has made two controlled buys to–wit: the informant was searched, given money, observed to enter and return from a residence with controlled substances purchased from within.

*Fisher,* at 964.

Here, the informant had made five "controlled buys" of drugs that were proven reliable over a 5–month period. The informant had also provided information that led to two felony arrests and the seizure of heroin and marijuana. The affidavit is sufficient to establish the informant's reliability.

The trial court did not abuse its discretion. *See Seagull,* at 907.

The judgment is affirmed.

CORBETT, J., concurs.

RINGOLD, J. (concurring)—The opinion of the court should not be read in any way as encouraging or condoning the actions of the officers in this case. Forgery of the arrest warrant was a crime, RCW 9A.60.020. Despite the officers' concern, there were many other ruses that could be used without forging a court document and compromising the court system. As stated so eloquently by Justice Brandeis:

> Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that the Government may commit crimes in order to secure the conviction of a private criminal—would bring terrible retribution. Against that pernicious doctrine this Court should resolutely set its face.

*Olmstead v. United States,* 277 U.S. 438, 485, 72 L. Ed. 944, 48 S. Ct. 564, 66 A.L.R. 376 (1928) (Brandeis, J., dissenting).

The entry gained here, however, did not violate Myers' due process rights. The forged arrest warrant was irrelevant to the search. It cannot be said nor does the defendant argue that the evidence seized was the fruit of the forged warrant. Myers' motion to suppress the evidence was therefore properly denied.

The proper remedy in this case is not to free the equally culpable defendant, but to prosecute the police. *See*

*Hampton v. United States,* 425 U.S. 484, 48 L. Ed. 2d 113, 96 S. Ct. 1646 (1976).

Reconsideration denied September 20, 1983.

Review granted by Supreme Court January 30, 1984.