UNITED STATES of America, Plaintiff-Appellee,

v.

Curtis Keith GLASSEL, Defendant-Appellant.

No. 73-2044.

United States Court of Appeals, Ninth Circuit.

Dec. 7, 1973.

Robert J. Hirsh, of Messing, Hirsh & Franklin, Robert J. Hooker (argued), Tucson, Ariz., for defendant-appellant.

William C. Smitherman, U. S. Atty. James E. Mueller, Asst. U. S. Atty. (argued), Tucson, Ariz., for plaintiff-appellee.

Before CARTER and GOODWIN, Circuit Judges, and EAST,* District Judge.

## OPINION

JAMES M. CARTER, Circuit Judge:

Defendant was convicted and sentenced on two counts: the first conviction was under 21 U.S.C. §§ 841(a) and 841(b) for possession of cocaine with intent to distribute; the second was under 21 U.S.C. §§ 841(a) and 846 for attempting to distribute cocaine. He appeals, contending that the cocaine was unlawfully seized and therefore improperly admitted into evidence at trial, and that the trial judge improperly refused to instruct the jury on the entrapment defense. We affirm.

### Facts

In the spring of 1971, Richard Price, an informer, and Frederic Mann, an officer for the Federal Bureau of Narcotics and Dangerous Drugs, concealing their identities, began negotiations with a group of men in Arizona for the purchase of cocaine. The defendant, Curtis Keith Glassel, was not involved in these early negotiations.

Later, on June 5, 1971, Price and Mann were invited to a house in Tucson with the understanding that there they would complete the deal. They met Glassel inside the house and learned for the first time that he was participating in the sale. They all went back to the kitchen, where Glassel, who was suspicious of Price and Mann, subjected them to ten or fifteen minutes of questioning about their backgrounds. Price insisted that he was not an agent and urged Glassel to go through with the deal. Mann, sitting quietly at the kitchen table, let Price do most of the talking. Finally, Glassel left the kitchen, returning moments later with small bags of cocaine and a weighing scale. After examining the merchandise, Price and Mann agreed to buy. While Mann, the narcotics officer, remained seated at the kitchen table with the cocaine in front of him, Price left the house, supposedly to get money.

---

* Honorable William G. East, Senior United States District Judge, District of Oregon, sitting by designation.

His exit was a signal for other officers, waiting nearby, to descend on the house. They promptly did so, entering the house from both the front and the rear, without first announcing their purpose and authority. They immediately arrested everyone, including Mann, and seized the cocaine.

### Legality of the Seizure

■ Before his trial, Glassel moved to suppress the cocaine as evidence on grounds that the arresting officers, by entering the house without first giving notice of their authority and purpose as required in 18 U.S.C. § 3109,[1] made an illegal search which rendered the seizure unlawful. The motion was properly denied. We need not decide whether the arresting officers inexcusably failed to comply with 18 U.S.C. § 3109, for even assuming they so failed, the cocaine was nonetheless lawfully seized by virtue of the lawful presence of officer Mann inside the house and his constructive possession of the narcotics.

■ Clearly officer Mann did nothing to violate 18 U.S.C. § 3109 or the fourth amendment. Under the rule of Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), an officer may legitimately obtain an invitation into a house by misrepresenting his identity, as Mann did. If he is invited inside, he does not need probable cause to enter, he does not need a warrant, and, quite obviously, he does not need to announce his authority and purpose. Once inside the house, he cannot exceed the scope of his invitation by ransacking the house generally, *Lewis, supra,* at 210 and 211, 87 S.Ct. 424, but he may seize anything in plain view. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1970).

Without question, the cocaine was in Mann's plain view, having been placed directly in front of him on the kitchen table. Prior to the raid, he had picked up the cocaine to examine it, and therefore had it in his possession at that time. When Price left the house to signal the other officers, Mann stayed behind, keeping the cocaine within his control and thus making sure that nobody could remove it before the raid was completed. He was prepared to confiscate the cocaine himself, if necessary, but since the other officers were able to take possession without further aid from him, he stood aside. This allowed him to continue to conceal his identity, thereby maintaining his value as an undercover agent. Despite the secrecy of his role, he played an active and substantial part in the seizure.

The only question, therefore, is whether a failure by the arresting officers to comply with § 3109 would taint the entire seizure. Arguing that it would, Glassel points to Sabbath v. United States, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968). In that case, Jones, a private individual who was temporarily acting as a stool pigeon for the government, was lawfully present in a house which government officers then entered without giving notice as required by 18 U.S.C. § 3109. The evidence was suppressed as the product of an unlawful search. But *Sabbath* does not control our case, for our factual situation is crucially different. In *Sabbath*, Jones did not participate in the arrest or seizure, nor was he authorized to do so. He was merely the defendant's unfaithful cohort whose temporary role as "agent" involved nothing more than being a stool pigeon.

In our case, however, Mann was a full-time narcotics officer with authority

---

1. 18 U.S.C. § 3109 provides as follows:

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

While the statute refers only to the execution of search warrants, it is established law that warrantless searches are governed by the statute as well. Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958).

to make arrests and seize evidence. Unlike Jones, he was under a duty to guard the contraband, which he did, and to take actual possession if necessary.

Under these circumstances, the seizure of the cocaine was lawful. We need not reach the question of compliance with 18 U.S.C. § 3109 unless there was a causal connection between the police conduct, legal or illegal, and the obtaining of the evidence which was the subject of the suppression hearing. Because we have held that officer Mann was lawfully in the house and had constructive possession of the cocaine, there was no such causal connection.

### The Entrapment Defense

Glassel assigns as error the refusal by the trial judge to instruct the jury on the defense of entrapment. We find, however, that the ruling below was correct because the evidence of entrapment was insufficient to submit to the jury.

In considering the sufficiency of the evidence, we note that the entrapment consists of two elements: (1) government agents induce the defendant to commit the particular acts charged in the indictment, and (2) the defendant's predisposition is such that he is not otherwise ready and willing to commit the offense on any propitious opportunity. United States v. Sherman (2 Cir. 1952) 200 F.2d 880. Once these two elements are in issue, the government has the burden of showing beyond a reasonable doubt that entrapment did not exist. Notaro v. United States (9 Cir. 1966) 363 F.2d 169, 175.

But "[t]he duty of determining whether or not the issue exists is the judge's duty, not the jury's. . . . *Notaro, supra,* at 175. When the evidence presents no genuine dispute as to whether the defendant was entrapped, there is no factual issue for the jury, and the judge then has a duty to rule on the defense as a matter of law. Smith v. United States (9 Cir. 1968) 390 F.2d 401.

In this case, the evidence of entrapment presented a question of law for the court. Glassel interrogated Price and Mann for approximately ten minutes before acceding to their request to buy cocaine. The record makes it abundantly clear that Glassel's hesitation sprang only from a fear, ultimately borne out, that Price and Mann were undercover agents. Such hesitation would be natural in even the most hardened of criminals. It is likely that almost every illegal sale of narcotics to a stranger is transacted somewhat gingerly.

Thus proof that the defendant was cautious because he thought Price and Mann might be government agents does not in itself raise the issue of entrapment. His actions showed, without dispute, that he was predisposed to the crime. He possessed weighing scales and a commercial quantity of the cocaine; he associated himself with other persons who illegally dealt in narcotics; his kitchen talk with Price and Mann demonstrated a businesslike desire to complete the sale if safe to do so.

On this record, no jury could reasonably doubt that Glassel was predisposed to commit the offense. The judge therefore had a duty to rule against entrapment as a matter of law.[2]

Affirmed.

2. Notaro v. United States (9 Cir. 1966) 363 F.2d 169, 174–175, n. 6, contains dictum to the effect that the issue of entrapment is raised for the jury whenever a showing is made "that the commission of the offense was attended by the intervention of a government agent." Taken literally, such a rule would frequently encumber and confuse the jury with frivolous questions of entrapment. "Intervention" by government agents is to-day a standard device for apprehending criminals. In fact, entrapment cannot be a defense unless there is government participation or "intervention." If "intervention" by a government agent was in itself enough to raise a jury question, then all entrapment defenses would go to the jury. Certainly the trial judge has the right to rule against the defense as a matter of law.