[No. 1817-2.    Division Two.    April 9, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. RICKY D. HUCKABY, ET AL, *Appellants*.

*Richard L. Barbieri* (of *Edwards, Wetherall & Barbieri*), for appellants.

*Henry R. Dunn, Prosecuting Attorney*, and *Robin Force, Deputy*, for respondent.

PEARSON, J.—The defendant Ricky Huckaby was convicted on one count of delivery of marijuana, and both he and his wife Patsy Huckaby, his coappellant herein, were

convicted on three counts charging them with (1) possession of marijuana, (2) possession of barbiturates, and (3) possession of amphetamines. Incident to the arrest of the defendants, police seized and took possession of certain controlled substances. Prior to trial, defendants moved to suppress the seized articles. After a hearing, their motion was denied. Thereafter at trial the drugs were introduced into evidence over the defendants' objections. Following the verdict, the defendants unsuccessfully moved to arrest judgment and for a new trial on the basis that the trial court had erred in admitting the evidence. The issues on appeal are limited to the validity of the trial court's refusal to exclude the drugs from evidence at trial. For the reasons stated below, we find the drugs were properly admitted and affirm the convictions.

With respect to the seized evidence, Officer Johnson of the Washington State Patrol Drug Control Assistance Unit and Detective Greene and other members of the Kelso Police Department testified regarding the arrests and seizure as follows. On November 26, 1974, Officer Johnson, working in an undercover capacity, purchased a pound of marijuana from one Rapp. Rapp took Johnson to the Huckaby residence where the sale took place. Johnson stated the Huckabys were present, but could not recall whether he and the Huckabys were formally introduced. While in the house, Johnson heard Ricky Huckaby tell Rapp that "it" was in the kitchen. Rapp went into the kitchen, returned with the marijuana, and handed it to Johnson in return for $140. Rapp retained some of the money and gave the rest to Ricky Huckaby; Johnson and Rapp then left. Later that day Johnson informed Detective Greene of what had transpired. Johnson, Greene, and a prosecuting attorney then determined they had probable cause to arrest Ricky Huckaby based on this sale. At no time, however, were search or arrest warrants obtained.

Between November 26 and December 2, 1974, Johnson made another marijuana purchase from Rapp. On this occasion the sale took place at another location. After the sale,

Johnson followed Rapp to the street, where he saw Ricky Huckaby sitting in Rapp's car. It is not clear whether Huckaby saw Johnson.

On the night of December 2, 1974, Johnson and Greene returned to the Huckaby residence. They testified they had a dual purpose in going there. Officer Johnson wanted to transact a marijuana purchase directly with Ricky Huckaby. Officer Greene was there to place Ricky Huckaby under arrest for the November 26 drug sale.

Greene and Johnson, who were not in uniform, approached the house and knocked on the door. Johnson was unable to remember which of the defendants opened the door, but Greene stated it was Ricky and that he appeared to recognize Johnson. Johnson asked for permission to enter and they were invited in.

Once inside, Johnson asked Ricky Huckaby if he had a pound of marijuana to sell. Huckaby was unwilling to sell him any. At this point the officers identified themselves as police officers and Greene placed Ricky under arrest. Other police officers outside were then notified by radio to enter. While waiting for the additional officers, Johnson observed Mrs. Huckaby standing next to an open pantry in the kitchen, where she appeared to have her hands in a sack. He asked her to step away from the cupboard and to keep her hands out of the sack. He looked into the pantry for weapons and observed what appeared to be a bag of marijuana stems and a bag of marijuana seeds. He did not then seize the drugs.

When the additional officers arrived they made a cursory search of the house, looking for other suspects. One officer opened the kitchen pantry and discovered the bag of marijuana stems seen by Johnson earlier. He removed the bag from the pantry and placed it on the kitchen table. Two end tables next to the couch on which Ricky was sitting were searched for weapons. No weapons were found, but the officer making the search discovered several baggies of marijuana, some white tablets, and what appeared to be liquid hashish.

All of the police officers, including Greene and Johnson, testified they detected the smell of marijuana vegetable matter immediately upon entering the house.

After the Huckabys' arrest and the initial search for weapons and other persons in the house, Johnson and Greene secured a search warrant. The only probable cause cited by the police in their affidavit for the warrant was the odor. A search was conducted pursuant to the warrant, at which time various quantities of controlled substances were taken into police custody. It is the evidence seized pursuant to the warrant which was the subject of the defendants' motions to suppress.

Defendants contend this evidence was inadmissible because it was "tainted" by what the defendants argue was an illegal entry of their home by Greene and Johnson and an illegal arrest of Ricky Huckaby. They argue that the entry and Ricky Huckaby's arrest were made in violation of the "knock and announce" rule, RCW 10.31.040,[1] article 1, section 7 of the Washington State Constitution, and the Fourth Amendment. In the alternative, they urge us to adopt the position that a night-time arrest inside a dwelling without a warrant is, absent exigent circumstances, unreasonable per se under the constitutional provisions cited above.

We find, under the facts presented herein, the entry of Officers Greene and Johnson was lawful and the provisions of RCW 10.31.040 are inapplicable.

Some of defendants' contentions are based solely on conflicting testimony received at the suppression hearing. Ricky Huckaby testified he heard the officers approaching and waited at the partially open door until they arrived. He stated that when he failed to recognize Johnson, the officers forcefully entered the house without knocking, identifying themselves, or stating their purpose for being there. Patsy

---

[1] RCW 10.31.040 provides:

"To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance."

Huckaby and a guest of the Huckabys supported this testimony. The three also testified that Johnson asked Ricky if he would like to "smoke some hash" and then immediately displayed his badge and placed Huckaby under arrest.

Normally the defendants could not rely on this testimony to support their contention that, contrary to the finding of the trial court, Officers Johnson and Greene made a nonconsensual, forceful entry of their home. Their testimony was contradicted by that of the police officers and the trial judge resolved the conflict by choosing to believe the police officers, rather than the defendants. However, because defendants contend the trial court was somewhat reluctant to accord them their full range of constitutional rights, we feel it incumbent upon us to independently examine the record and the court's findings on this issue to determine whether there has been a denial of due process. *McNear v. Rhay*, 65 Wn.2d 530, 398 P.2d 732 (1965); *State v. Hoffman*, 64 Wn.2d 445, 392 P.2d 237 (1964); *Haynes v. Washington*, 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336 (1963). In doing so, we do not undertake to reevaluate the credibility of the witnesses, but we are concerned "that it be convincingly evident from the record that constitutional privileges have not been abused. Strained findings of fact, predicated upon translucent or sophisticated evidence, cannot stand." *State v. Hoffman, supra* at 451.

Examination of the record in the present case satisfies us that the trial court's finding that Greene and Johnson were invited into the Huckaby home is amply supported by the evidence. The trial court did not err in making this determination.

We turn now to the legal issues raised by the defendants. The parties do not dispute that the arrest of Ricky Huckaby was made without a warrant, that the officers failed to give notice of their identity and purpose prior to entry, or that the evidence was seized upon the basis of observations made by the police after their entry of the Huckaby home. Thus the question of whether the

Huckabys' arrest was legal, and therefore the subsequent seizure of the evidence and arrest of Patsy Huckaby untainted,[2] becomes a question of law, and the trial court's determination of this question is a reviewable conclusion of law. *See State v. Byers*, 85 Wn.2d 783, 539 P.2d 833 (1975).

Defendants contend that since one of the officers' purposes in seeking entry was to arrest Ricky Huckaby, it was incumbent upon them to identify themselves and to state their purpose prior to entering. They argue that absent such announcement the unforced, deceptive[3] entry of Officers Greene and Johnson constituted a "breaking" under the statute. We disagree.

■ The use of deception to gain entry to a premises, as long as no force is involved, has long been considered proper police practice, and in such cases law enforcement officers need not announce their identity, authority, and purpose under the "knock and announce" rule. *See, e.g., United States v. Beale*, 445 F.2d 977 (5th Cir. 1971); *United States v. Syler*, 430 F.2d 68 (7th Cir. 1970); *see also United States v. Phillips*, 497 F.2d 1131 (9th Cir. 1974); *State v. Monteith*, 4 Ore. App. 90, 477 P.2d 224 (1970); *Ponce v. Craven*, 409 F.2d 621 (9th Cir. 1969) (applying California law); E. Fisher, *Laws of Arrest* 283 (1967); *Dickey v. United States*, 332 F.2d 773 (9th Cir. 1964); *Leahy v. United States*, 272 F.2d 487 (9th Cir. 1959).

Support for undercover or deceptive police tactics may be found in several Supreme Court cases. Such tactics are

[2]Defendants' appeal is based solely on their contention that the arrest of Ricky Huckaby was unlawful and all evidence discovered as a result of that arrest should have been suppressed. They have not raised, nor will we consider, any other questions regarding the conduct of the search itself or the arrest of Patsy Huckaby.

[3]Defendants in this case assume without discussion that the entry of Johnson and Greene in their undercover capacity for the purpose of arresting Ricky Huckaby was a "ruse" entry. We find it unnecessary to determine whether the action of the officers constitutes a ruse. We do note, however, that the so-called ruse entry cases appear to involve affirmative misrepresentations by police officers, *e.g.*, Annot., 21 A.L.R. Fed. 820 (1974); *Smith v. United States*, 357 F.2d 486 (5th Cir. 1966); *Leahy v. United States*, 272 F.2d 487 (9th Cir. 1959), rather than an omission on the part of a police officer regarding his identity, as here.

often essential to detect unlawful activity. *See, e.g., United States v. Russell*, 411 U.S. 423, 36 L. Ed. 2d 366, 93 S. Ct. 1637 (1973); *Lewis v. United States*, 385 U.S. 206, 17 L. Ed. 2d 312, 87 S. Ct. 424, *rehearing denied*, 386 U.S. 939, 17 L. Ed. 2d 811, 87 S. Ct. 951 (1966); *Sorrells v. United States*, 287 U.S. 435, 77 L. Ed. 413, 53 S. Ct. 210, 86 A.L.R. 249 (1932); *Andrews v. United States*, 162 U.S. 420, 40 L. Ed. 1023, 16 S. Ct. 798 (1896); *Grimm v. United States*, 156 U.S. 604, 39 L. Ed. 550, 15 S. Ct. 470 (1895). In *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963) the court apparently acknowledged a distinction between a *peaceful* entry by ruse and an entry by *force* when a ruse entry failed. In *Wong Sun* a federal narcotics agent told the defendant he was calling for laundry and dry cleaning. The defendant refused him admittance and started closing the door. At this point the officer identified himself and forcefully entered the premises. The court, citing *Miller v. United States*, 357 U.S. 301, 2 L. Ed. 2d 1332, 78 S. Ct. 1190 (1958), held the entry unlawful, and stated that the officer in failing to announce his purpose did not adequately dispel the misimpression engendered by his original ruse.

Other federal cases support the conclusion that a permissive entry by an undercover police officer does not require compliance with the analogous federal no-knock rule. *See, e.g., United States v. Glassel*, 488 F.2d 143, 145 (9th Cir. 1973), quoted in *United States v. Phillips*, 497 F.2d 1131, 1134 (9th Cir. 1974), where the court stated:

> "Under the rule of Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), an officer may legitimately obtain an invitation into a house by misrepresenting his identity . . . If he is *invited* inside, he does not need probable cause to enter, he does not need a warrant, and, quite obviously, he does not need to announce his authority and purpose."

(Italics ours.) Defendants argue, however, that under Washington law a nonpermissive entry into a dwelling absent exigent circumstances or compliance with RCW 10.31.040, is unlawful. They contend that the entry here

was not permissive, since the officers failed to announce they were there to arrest Ricky Huckaby when they requested admission. Reliance for this argument is placed primarily on *State v. Miller*, 7 Wn. App. 414, 499 P.2d 241 (1972); *State v. Dugger*, 12 Wn. App. 74, 528 P.2d 274 (1974); and *Coleman v. Reilly*, 8 Wn. App. 684, 508 P.2d 1035 (1973). We do not agree that these cases support defendants' position.

In *State v. Miller, supra,* the court was not concerned with legitimate undercover police activity. There, a police officer entered a private dwelling through an open door to execute a search warrant. The officer's failure to announce his office and purpose and to demand admission was held to constitute a "breaking" within the meaning of RCW 10.31.040. The court there stated at page 419:

> We interpret *Sabbath* as approving the view "that the word 'break' as used in 18 U.S.C. § 3109, means 'enter without permission,'" and that, accordingly, entry may not be made by the police officer under the substantially similar RCW 10.31.040 without first announcing both identity and purpose of entry and demanding admission.

The decision in *State v. Miller* was based, in part, upon *Sabbath v. United States*, 391 U.S. 585, 20 L. Ed. 2d 828, 88 S. Ct. 1755 (1968) and *Miller v. United States, supra.* These cases together require federal officers, pursuant to 18 U.S.C. § 3109 (1970),[4] to announce their authority and purpose prior to making a nonconsensual entrance of a dwelling through an unlocked or partially open door to make a warrantless arrest. *Miller v. United States* involved the *forceful* entry of a police officer who broke through an attached door chain to gain admittance into a home. *Sabbath*, on the other hand, involved no force, but the Supreme Court expressly stated in that case, "We do not deal here with

---

[4] 18 U.S.C. § 3109 provides:

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

entries obtained by ruse, which have been viewed as involving no 'breaking.' " *Sabbath v. United States, supra* n.7, at 590.

Neither of these cases involved unforced, consensual entry by undercover police officers. Accordingly, we do not believe that *State v. Miller, supra,* by itself, compels a holding that the undercover officers in this case "broke" into the defendants' home, in violation of RCW 10.31.040.

Nor are *State v. Dugger, supra* and *Coleman v. Reilly, supra,* dispositive. While it is true that both these cases involved undercover police activity, they too are factually distinguishable. In *State v. Dugger,* the question was whether the presence of an undercover police officer, whose true identity was unknown to the participants of a gambling party at the time of a police raid, would excuse the failure of the raiding officers to comply with RCW 10.31.040. The court held that it would not. In the present case the officers who arrested Ricky Huckaby *were* the undercover officers. We note the court in *Dugger* recognized that had "the undercover officer . . . attempted to effect an arrest or seize evidence before his fellow officers entered, the issues in this case would be significantly different." *State v. Dugger, supra* at 79.

In *Coleman v. Reilly,* undercover police officers left a gambling party at the defendant's home and returned with a police raiding squad. The undercover agents reentered the premises without identifying themselves or their purpose and were followed by the other officers. The gamblers were then arrested and the premises searched. In holding that the seized evidence should have been suppressed, the court rejected the State's theory that the unannounced entry was permissible because the defendant had impliedly consented or invited the undercover agents to return and that this consent extended to officers working with the agents. The present case involves no question of an implied invitation or consent to return to the Huckaby home. The arrest of Ricky Huckaby occurred after the initial entry of

the officers. Because of the factual distinctions, neither *State v. Dugger* nor *Coleman v. Reilly* is controlling here.

█ The purposes underlying RCW 10.31.040 would not be advanced by applying the exclusionary rule to suppress the evidence in this case. The Ninth Circuit Court of Appeals recently stated the rationale underlying the knock and announce rule.

> (1) It decreases the potential for violence. Particularly, the rule of announcement safeguards "officers, who might be mistaken, upon an unannounced intrusion into a home, for someone with no right to be there * * * ." Sabbath v. United States, *supra.*
> (2) It prevents the physical destruction of property. See Kaplan, Search and Seizure: A NO-MAN'S LAND IN THE CRIMINAL LAW, 49 Calif. L. Rev. 474, 501 (1961).
> (3) It protects the individual's right of privacy. *See* Sabbath v. United States, *supra* at 589, 88 S.Ct. 1755.

*United States v. Phillips,* 497 F.2d 1131, 1133 (9th Cir. 1974); *United States v. Bustamante-Gamez,* 488 F.2d 4, 9 (9th Cir. 1973); *see also State v. Dugger, supra.* Once undercover officers are invited into a home, the first purpose, that of protecting the officers upon an unannounced intrusion, is no longer of concern. The second purpose of the rule, to prevent unnecessary destruction of property, is no longer a problem once the officers are inside, since they are presumably in a position to thwart such destruction. *Cf. State v. Dugger, supra.*

Nor is the third purpose, protection of an individual's privacy, advanced when undercover police officers are invited into a suspect's home for purposes contemplated by the suspect. *See Lewis v. United States, supra; United States v. Bradley,* 455 F.2d 1181 (1st Cir. 1972). Defendants contend their constitutional right of privacy was violated when the officers entered their home for the purpose of arresting Ricky Huckaby. In effect, they argue that while the officers were lawfully on the premises to effect a felonious sale of narcotics, their presence became unlawful and violated defendants' right to privacy once their roles changed from undercover agents to arresting officers.

We find this proposition untenable, for such a holding would "come near to a rule that the use of undercover agents in any manner is virtually unconstitutional *per se.*" *Lewis v. United States, supra* at 210; *see also United States v. Bradley, supra.* The defendants waived their right to privacy upon their initial consent to allow the officers to enter. Since the officers, prior to Ricky Huckaby's arrest, discovered no more than what was exposed to them upon their initial entry, we do not see how defendants' right of privacy was offended by the officers' presence, once Johnson and Greene became arresting officers. The lawful presence of the officers upon their initial entry continued to be lawful after they exposed themselves as undercover agents and arrested Ricky Huckaby. *Cf. United States v. Glassel,* 488 F.2d 143 (9th Cir. 1973); *United States v. Hutchinson,* 488 F.2d 484 (8th Cir. 1973); *United States v. Bradley, supra; United States v. Syler,* 430 F.2d 68 (7th Cir. 1970); *Lewis v. United States, supra; United States v. Salgado,* 347 F.2d 216 (2d Cir. 1965).

For the foregoing reasons we hold that where law enforcement officers are engaged in legitimate undercover activity and are invited into a suspect's home for purposes contemplated by the suspect, the provisions of RCW 10.31.040 are inapplicable.

Defendants contend that even if RCW 10.31.040 was not violated by the officers, the officers' unforced, warrantless, night-time entry into defendants' home to arrest Ricky Huckaby upon probable cause, but absent exigent circumstances, was per se unreasonable under the provisions of the Fourth and Fourteenth Amendments. While we recognize this is a question of some importance,[5] we find it unnecessary to decide the issue in this case, since the question can be disposed of on other grounds.

In this jurisdiction a law enforcement officer may make a

---

[5]*See generally Gerstein v. Pugh,* 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975); *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); *Dorman v. United States,* 435 F.2d 385 (D.C. Cir. 1970); *Jones v. United States,* 357 U.S. 493, 2 L. Ed. 2d 1514, 78 S. Ct. 1253 (1958).

warrantless arrest based on his reasonable belief that a suspect is using or has possession of cannabis. RCW 10.31.100.[6] As we stated above, the initial entry of Officers Greene and Johnson in their undercover capacity was lawful. Both officers testified that they detected the odor of unburned marijuana immediately upon entry of the Huckaby home.[7] At this point the officers had probable cause to believe that the defendants were in possession of marijuana and they were therefore justified in arresting the defendants.

Thus even were we to hold that the failure to obtain an arrest warrant for Ricky Huckaby for the November 26 transaction violated some right of the defendant, his arrest was lawful under the terms of RCW 10.31.100, *cf. State v. Salgado, supra; State v. Perez*, 277 So. 2d 778 (Fla. 1973); *Gipe v. Dempsey*, 451 F.2d 1309 (9th Cir. 1971); *Johnson v. United States*, 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367 (1948), and the seizure of evidence as a result of that arrest was proper. We conclude, therefore, that the evidence was properly admitted at trial.

Judgment affirmed.

PETRIE, C.J., and REED, J., concur.

Petition for rehearing denied May 18, 1976.

Review denied by Supreme Court July 27, 1976.

---

[6]RCW 10.31.100 provides:

"Any police officer having information to support a reasonable belief that a person has committed or is committing a misdemeanor or gross misdemeanor, involving physical harm or threats of harm to any person or property or the unlawful taking of property or involving the use or possession of cannabis shall have the authority to arrest said person: *Provided,* That nothing herein shall extend or otherwise affect the powers of arrest prescribed in chapter 46 RCW."

[7]Officer Johnson, a member of the Washington State Patrol Drug Control Assistance Unit, testified at trial that he had the ability to detect the odor of unburned marijuana and had detected the distinctive odor upon entry of the Huckaby home. He stated that he could smell the odor from exhibits in the courtroom, where the marijuana was contained in a ziplock plastic bag.