[Nos. 6850–1–III; 6851–0–III.   Division Three.   March 27, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. CHRISTOPHER D. DALTON, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. KIMBERLY ANN HATT, *Appellant.*

*Timothy H. Esser* and *Irwin, Friel & Myklebust, P.S.,* for appellant Dalton (appointed counsel for appeal).

*Michael J. Pettit,* for appellant Hatt (appointed counsel for appeal).

*James H. Kaufman, Prosecuting Attorney,* for respondent.

McINTURFF, J.—Christopher Dalton and Kimberly Hatt appeal their convictions of delivery and possession of cocaine, contending the court erred when it denied their motion to suppress.

The undisputed facts indicate Ms. Hatt was the sole resident of Room 116, McCroskey Hall, a Washington State University (WSU) women's dormitory, on May 18 and 19, 1984, the dates of the criminal activity. David Redemann, a WSU student and reserve officer with the Moscow Police Department, advised the Pullman Police Department that Ms. Hatt would be receiving a shipment of cocaine on May 18. Working with the police department, he attempted to purchase cocaine from her at her dorm room on that date. Ms. Hatt indicated she had not yet received the cocaine, but offered to sell him marijuana instead. Since Ms. Hatt indicated the cocaine shipment was expected the 19th, Mr. Redemann agreed to return the next day.

On May 19, Mr. Redemann, calling from police head-quarters, arranged to meet with Ms. Hatt within the hour. While on the phone, he heard her state to someone in her room, "cut another gram". Ms. Hatt also instructed Rede-mann to call from the lobby of the dorm for an escort upon his arrival.

Subsequently, numerous police officers and undercover agents assembled at the Pullman Police Department. It was agreed Officer Irwin would have a key to unlock the dormi-tory if necessary. Mr. Redemann and Officer Barnes pro-ceeded to Ms. Hatt's dorm room; four other police officers were strategically positioned to provide backup.

Since the side entrance to the dorm was unlocked, it was not necessary to use Officer Irwin's key. Mr. Redemann and Officer Barnes passed through a small foyer, then through a set of inner doors, and, without any escort, proceeded a few feet down the hallway to Ms. Hatt's room. They knocked on her door and were admitted by Mark Johnston, a visitor. Also present in the room were Christopher Dalton, Steph-anie Lundquist, and a fourth person. Ms. Hatt was taking a shower in the community bathroom down the hall. Prior to leaving, she had informed Ms. Lundquist, within the hear-ing of Mr. Dalton and Mr. Johnston, that a "Dave" was coming to purchase cocaine and would call from the lobby for an escort.

After confirming with Mr. Johnston the fact there was cocaine to purchase, Mr. Redemann handed Mr. Dalton $120 in cash. Mr. Dalton opened a drawer and handed Mr. Redemann a bindle of cocaine. Officer Barnes immediately identified himself as a police officer and advised the occu-pants of the room they were under arrest for possession and delivery of cocaine, just as Ms. Hatt returned to her room. She was also arrested without a warrant. Subsequently, a search warrant was obtained and other drugs were found in the room when the warrant was executed.

In its findings, the court noted these disputed facts: (1) that Mr. Johnston was authorized, either directly or impliedly, to admit Mr. Redemann to the Hatt room; (2)

that Mr. Redemann and Officer Barnes proceeded into the dorm hallway, passing signs which stated unescorted men were not allowed in the dormitory.

Mr. Dalton first contends WAC 504–24–020, which requires guests visiting women's dorms to be escorted, has the full effect of law; that he had a reasonable expectation of privacy which was violated by the police and their agents. *State v. Campbell*, 103 Wn.2d 1, 691 P.2d 929 (1984), *cert. denied*, 105 S. Ct. 2169 (1985); *State v. Myrick*, 102 Wn.2d 506, 688 P.2d 151 (1984); *State v. White*, 97 Wn.2d 92, 640 P.2d 1061 (1982); *Athens v. Wolf*, 38 Ohio St. 2d 237, 313 N.E.2d 405 (1974).

■ The applicable regulations[1] provide that all guests to the dorm be escorted while in the building. It is undisputed Ms. Hatt informed Mr. Redemann he would need an escort to her room. The resolution of this issue must be premised upon whether there is a "reasonable expectation of privacy" to the room, as well as the corridor of the dormitory. The landmark case is *Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967), which held

---

[1] "WAC 504–24–020 Social policies and procedures. (1) Security hours.
"(a) Living groups are secured during the following hours:
"11:00 p.m.–6:30 a.m. daily
"(b) It is understood that a living group has the prerogative of maintaining additional security hours if decided by a vote of the living group. The living group's current security hours should be on file in the office of student affairs.
"(2) Guest rules.
"(a) Guests must comply with the regulations of the living groups they are visiting.
"(b) Keys or card keys will not be issued to guests.
"(c) The host or hostess shall be responsible for the action of guests.
"(d) All guests must be escorted while in the building.
"(e) Guests are defined as anyone not residing in the residence hall."
"WAC 504–20–030 Conduct regulations for campus guests and visitors. (1) The rules and regulations prescribed above will be observed by guests and visitors while on the campus, or other university property.
"(2) Guests and visitors on campus or other university property who willfully refuse to obey an order of a uniformed campus security officer or other law enforcement officer to desist from conduct prohibited by the above rules and regulations may be ejected from the premises. Refusal to obey such an order will subject the person to arrest under the provisions of the Criminal Trespass Act, in addition to such other sanctions as may be applicable."

a subjective expectation of privacy, which society is prepared to recognize as reasonable, is necessary before the protections of the Fourth Amendment can by applied.

> It is beyond question, therefore, that an unconsented police entry into a residential unit, be it a house or an apartment or a hotel or motel room, constitutes a search within the meaning of Katz v. United States [389 U.S. 347].

1 W. LaFave, *Search and Seizure* § 2.3, at 298 (1978).

The circumstances here are very similar to those found in *Lewis v. United States*, 385 U.S. 206, 211, 17 L. Ed. 2d 312, 87 S. Ct. 424, *reh'g denied*, 386 U.S. 939, 17 L. Ed. 2d 811, 87 S. Ct. 951 (1966), in which Chief Justice Warren stated:

> when, as here, the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street. A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant.

*See also United States v. Eschweiler*, 745 F.2d 435 (7th Cir. 1984) (recording devices used by undercover agent in suspect's home to gather information for illegal drug sale not violative of Fourth Amendment), *cert. denied*, 469 U.S. 1214, 84 L. Ed. 2d 334, 105 S. Ct. 1188 (1985); *United States v. Cerri*, 753 F.2d 61, 64 (7th Cir.) (gun dealer conducting illegal sales from private residence not protected by Fourth Amendment), *cert. denied*, ___ U.S. ___, 87 L. Ed. 2d 614, 105 S. Ct. 3479 (1985); *United States v. Glassel*, 488 F.2d 143, 145 (9th Cir. 1973) (undercover officer needs no warrant to enter private residence where entry is by invitation to complete drug buy), *cert. denied*, 416 U.S. 941, 40 L. Ed. 2d 292, 94 S. Ct. 1945 (1974).

Similar to *Lewis* is *State v. Huckaby*, 15 Wn. App. 280, 549 P.2d 35 (1976). There, an undercover agent purchased a pound of marijuana from a man named Rapp, while at the Huckaby residence. The agent, accompanied by another officer, returned to the Huckaby residence for two purposes:

(1) to make a purchase direct from Huckaby, (2) to arrest Huckaby for the prior sale. Both agents were invited into the residence by Huckaby, but were not able to make the second purchase. Subsequently, the officers identified themselves and placed Huckaby under arrest. Huckaby argued the drug evidence was inadmissible because it was "tainted" by the illegal entry and illegal arrest, which were violative of the "knock and announce" rule, RCW 10.31-.040, article 1, section 7 of the Washington Constitution and the Fourth Amendment. In the alternative, he contended that a nighttime arrest inside a dwelling without a warrant and exigent circumstances was per se unreasonable.

The court held the entry by ruse was lawful, the provisions of RCW 10.31.040 inapplicable, and failed to reach the per se argument. Noting undercover tactics are acceptable police practice, officers need not announce their identity, the court thus distinguished *State v. Miller,* 7 Wn. App. 414, 499 P.2d 241 (1972), *State v. Dugger,* 12 Wn. App. 74, 528 P.2d 274 (1974), and *Coleman v. Reilly,* 8 Wn. App. 684, 508 P.2d 1035 (1973). The court refused to address the issue of the "per se unreasonable" arrest for there was authority under RCW 10.31.100(1)[2] to make the arrest, *i.e.,* the defendant was using or possessed cannabis.

Mr. Dalton responds by arguing *Huckaby* is no longer law in light of *Payton v. New York,* 445 U.S. 573, 585, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). Whether *Payton* has nullified *Huckaby* need not be decided here, since the issue of a warrantless arrest where the crime has been previously committed in another location is not the situation in this case.

Here, Mr. Dalton, with the permission of Ms. Hatt, used her dorm room for the conduct of a business, the sale of narcotics. Mr. Redemann and Officer Barnes entered at

---

[2]RCW 10.31.100(1) provides:

"Any police officer having probable cause to believe that a person has committed or is committing a misdemeanor or gross misdemeanor . . . involving the use or possession of cannabis shall have the authority to arrest the person."

their invitation, in the same manner as any other buyer for the very purpose contemplated by the defendants and took nothing away except what would have been taken by a willing purchaser; thus, there was no intrusion upon the "sanctity" of Ms. Hatt's home. As aptly summarized in *Lewis,* 385 U.S. at 212:

> "In short, this case involves the exercise of no governmental power to intrude upon protected premises; the visitor was invited and willingly admitted by the suspect. It concerns no design on the part of a government agent to observe or hear what was happening in the privacy of a home; the suspect chose the location where the transaction took place. It presents no question of the invasion of the privacy of a dwelling; the only statements repeated were those that were willingly made to the agent and the only things taken were the packets of marihuana voluntarily transferred to him. The pretense resulted in no breach of privacy; it merely encouraged the suspect to say things which he was willing and anxious to say to anyone who would be interested in purchasing marihuana."

The purpose of WAC 504–24–020 is not to protect the defendants' illegal business, but rather to protect the privacy of dorm residents from members of the general public who have no reason to be in the dorm. Ms. Hatt had waived her right of privacy when she invited Mr. Redemann to her residence to conduct an illegal transaction. To hold otherwise would result in strained or absurd consequences when construing the literal effect of the WAC at issue. *State v. Keller,* 98 Wn.2d 725, 657 P.2d 1384 (1983).

Mr. Dalton next contends that under *Payton v. New York, supra* (applied retroactively through *State v. Counts,* 99 Wn.2d 54, 659 P.2d 1087 (1983)), the five exigent circumstances which eliminate the need for a warrant are not present here.[3] He argues that where officers go to a resi-

---

[3]*State v. Counts, supra* at 60, listed five separate circumstances considered "exigent" which would eliminate the need for a warrant: (1) hot pursuit; (2) fleeing suspect; (3) danger to arresting officer or to the public; (4) mobility of a vehicle; (5) mobility or destruction of evidence.

dence with the intent of arresting its occupant, they must first obtain a warrant. *Payton* held unconstitutional a New York statute which authorized police officers to enter a private residence without a warrant and with force, if necessary, to make a routine felony arrest for a felony which had been previously committed.

■ In contrast, RCW 10.31.100[4] provides for an arrest without a warrant where the police officer has reasonable cause to believe a felony has been committed. *State v. Green*, 70 Wn.2d 955, 425 P.2d 913, *cert. denied*, 389 U.S. 1023, 19 L. Ed. 2d 670, 88 S. Ct. 598 (1967). This statute is not at odds with *Payton* and the Washington cases which followed,[5] because they concern felonies which have been committed outside the presence of the police officer. Here, there was no need for a warrant because defendants' act of selling the cocaine was a felony committed in the presence of the officer; thus, arrest was authorized under RCW 10.31.100. Mr. Dalton's argument regarding the need to find exigent circumstances was not appropriate under these facts. *Gipe v. Dempsey*, 451 F.2d 1309 (9th Cir. 1971), *cert. denied*, 405 U.S. 990, 31 L. Ed. 2d 456, 92 S. Ct. 1254, *reh'g denied*, 406 U.S. 911, 31 L. Ed. 2d 822, 92 S. Ct. 1605 (1972); *State v. Aydelotte*, 35 Wn. App. 125, 665 P.2d 443 (1983); *Huckaby*.

Ms. Hatt next contends a valid consent is needed before undercover agents may enter a citizen's home without a warrant for the dual purpose of conducting a drug "buy" and effecting an arrest. However, the issue of consent is based on the premise defendants had a reasonable expectation of privacy in the dormitory room. Under the rule announced in *Lewis*, there is no such expectation of privacy

---

[4]RCW 10.31.100 provides:

"A police officer having probable cause to believe that a person has committed or is committing a felony shall have the authority to arrest the person without a warrant."

[5]*State v. Holeman*, 103 Wn.2d 426, 693 P.2d 89 (1985); *State v. Dresker*, 39 Wn. App. 136, 692 P.2d 846 (1984).

where that residence has been converted to a commercial center for the sale of controlled substances.

It is undisputed Ms. Hatt had offered on May 18 to sell cocaine to Mr. Redemann on May 19, at her dorm room. It is also undisputed Ms. Hatt had told Lundquist, within the hearing of Mr. Johnston, that a "Dave" was coming to purchase cocaine. Thus, there is sufficient evidence to support the court's finding that Johnston had authority to admit Dave to the room for the purpose of completing the buy, even though theoretically he may not have had authority to consent to a search.

Finally, Ms. Hatt contends the search warrant issued after the arrest was invalid because the original entry was invalid: (1) there was no "good faith", as the information was obtained during an illegal search and seizure, and (2) "good faith" has been rejected in Washington State, citing *State v. White,* 97 Wn.2d 92, 640 P.2d 1061, 1070–71 (1982).[6]

Once again, this argument is premised on an illegal entry. We find that under *Lewis,* the entry was legal. Thus, we find no error in the court's denial of the motion to suppress.

The judgment of the Superior Court is affirmed.

GREEN, C.J., and MUNSON, J., concur.

Reconsideration denied May 15, 1986.

Review denied by Supreme Court July 8, 1986.

---

[6]We note the issue of whether this State will adopt the "good faith" exception to the exclusionary rule was set for the January 1986 term of the Washington Supreme Court: State v. Huft, cause 50948–4.