[No. 7761–6–III.   Division Three.   December 3, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. GEORGE P. RAMIREZ, *Appellant.*

---

*Victor Lara* and *Schwab, Kurtz & Hurley,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Robert Hackett, Deputy,* for respondent.

MUNSON, J.—George Ramirez appeals his conviction for possession of heroin and cocaine, contending the trial court erred in not suppressing the drugs seized by police officers following their warrantless entry into a hotel room where Mr. Ramirez and others were smoking marijuana. We reverse.

The following undisputed facts are taken primarily from the transcript of Mr. Ramirez' suppression hearing. Two Yakima police officers, James Platt and William Dizmang, were on foot patrol in an area which included the Cascade Apartments. The officers had previously received information from the hotel manager that narcotics trafficking was occurring within the building and had been asked to patrol the building. At approximately 7:30 p.m. on January 9, 1986, the officers, pursuant to the request, were on the

third floor of the building when they smelled the strong odor of burning marijuana. Both officers recognized that smell from past police experience, as well as from their formal training. The officers determined the smoke was emanating from a 2–inch gap above the door to room 305; the door was not flush with the surrounding casing.

The officers knocked on the door several times, finally receiving a query asking "who was there"? Officer Platt responded, "the desk clerk," because he was afraid the marijuana would be destroyed if he identified himself as a police officer. The officer testified he heard an object being moved prior to opening the door. Thereafter, Mr. Ramirez opened the door. Upon seeing the two officers in full uniform, he stepped back from the door and opened his hands. The officers then stepped inside the room without first requesting permission or receiving an express invitation. Apparently two other men were in the room; their presence has no bearing on this appeal. After the officers entered the room, Mr. Ramirez took several items, resembling marijuana cigarettes, out of his pocket, placed them on the table, and said, "That's all I have."

The officers observed a large bulge in Mr. Ramirez' right cheek which they believed could possibly contain other controlled substances. Officer Platt asked Mr. Ramirez what was in his mouth, to which he replied, "nothing" and clamped his jaw. Following a demand for him to open his mouth, a struggle ensued during which several small packets were knocked out of his mouth. These items later tested positive for heroin and cocaine.

No other testimony was taken at the suppression hearing. Based on this evidence, the trial court initially concluded the State had failed to meet its burden of proving the officers' warrantless entry into room 305 was consensual. In its March 18 memorandum opinion, however, the court concluded the smell of burning marijuana gave the officers probable cause to conduct a further investigation. In addition, the court found the existence of exigent circumstances, *i.e.*, the consumption–destruction of the marijuana,

allowed the officers to enter the room without a warrant. Given that the officers had probable cause plus exigent circumstances, the court found the officers' warrantless entry into the room lawful and therefore denied Mr. Ramirez' motion to suppress.[1]

The primary issue is whether the officers' entry into the room to arrest Mr. Ramirez without a warrant was permissible under the Fourth Amendment and article 1, section 7 of the Washington Constitution. Both the Fourth Amendment and Const. art. 1, § 7 provide individuals, while in their homes, with significant constitutional safeguards.[2] The State admits that, for purposes of the Fourth Amendment, the constitutional protections afforded homes are extended to other residential premises such as rented hotel rooms. *See, e.g., Hoffa v. United States,* 385 U.S. 293, 17 L. Ed. 2d 374, 87 S. Ct. 408 (1966); *Stoner v. California,* 376 U.S. 483, 11 L. Ed. 2d 856, 84 S. Ct. 889 (1964); *United States v. Rambo,* 789 F.2d 1289, 1295 (8th Cir. 1986); *United States v. Newbern,* 731 F.2d 744, 748 (11th Cir. 1984); *United States v. Bulman,* 667 F.2d 1374, 1383 (11th Cir.), *cert. denied sub nom. Howard v. United States,* 456 U.S. 1010, 73 L. Ed. 2d 1307, 102 S. Ct. 2305 (1982); *State v. Dalton,* 43 Wn. App. 279, 283, 716 P.2d 940, *review*

---

[1]At the time of presenting the findings and conclusions denying the suppression motion, the prosecutor asked to be permitted to introduce additional evidence that the defendant was a trespasser, a fact overlooked during the suppression hearing. The court declined, believing it had sufficient reason to deny the motion. This court remanded for a determination of the trespasser issue; the State was unable to produce that evidence; hence, the defendant will be considered to have been lawfully in the apartment.

[2]*Compare Welsh v. Wisconsin,* 466 U.S. 740, 748–49, 80 L. Ed. 2d 732, 104 S. Ct. 2091 (1984) *and Payton v. New York,* 445 U.S. 573, 585, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980) ("'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'") (quoting *United States v. United States Dist. Court,* 407 U.S. 297, 313, 32 L. Ed. 2d 752, 92 S. Ct. 2125 (1972)) *with* Const. art. 1, § 7 ("No person shall be disturbed in his private affairs, *or his home invaded*" (italics ours)); *State v. Bell,* 108 Wn.2d 193, 207, 737 P.2d 254 (1987) (Pearson, C.J., concurring) *and* Nock, *Seizing Opportunity, Searching for Theory: Article 1, Section 7,* 8 U. Puget Sound L. Rev. 331 (1985).

*denied,* 106 Wn.2d 1010 (1986). Inasmuch as Const. art. 1, §
7 affords greater protection to privacy interests than the
Fourth Amendment, *State v. Bell,* 108 Wn.2d 193, 196, 737
P.2d 254 (1987), its protection similarly applies to other
dwelling places such as this hotel room where the privacy
interests generated are analogous to those found in a home.
Consequently, Mr. Ramirez possessed a "legitimate" or
"reasonable" expectation of privacy in the premises here
under both the Fourth Amendment and Const. art. 1, § 7.

Searches and seizures under either the federal or state
constitution inside a home without a warrant are presump-
tively unreasonable. *Payton v. New York,* 445 U.S. 573, 586,
63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980); *Bell,* at 196; *State
v. Daugherty,* 94 Wn.2d 263, 266–67, 616 P.2d 649 (1980),
*cert. denied,* 450 U.S. 958 (1981). Therefore, in the absence
of consent or exigent circumstances, both provisions pro-
hibit the warrantless entry into an individual's home in
order to make a felony arrest even though probable cause
exists to arrest the individual therein. *Payton,* 445 U.S. at
587–88, 590; *State v. Holeman,* 103 Wn.2d 426, 429, 693
P.2d 89 (1985); *see also State v. Counts,* 99 Wn.2d 54, 60–
61, 659 P.2d 1087 (1983). The trial court here found the
officers' entry was nonconsensual. Because the State does
not challenge that finding, we assume for purposes of this
appeal that there was no valid consent to enter the hotel
room.[3]

The State instead contends that *Payton's* "probable
cause plus exigent circumstances" exception to the warrant
requirement is applicable under these facts and therefore
the officers' warrantless entry was lawful under both the

---

[3]We note the State has the burden of showing that consent was voluntary by
clear and convincing evidence. *State v. Nelson,* 47 Wn. App. 157, 163, 734 P.2d
516 (1987). Mr. Ramirez' actions in opening the door and stepping backward in
the face of the uniformed officers provides an insufficient factual basis for finding
he consented to the entry. *Johnson v. United States,* 333 U.S. 10, 13, 92 L. Ed.
436, 68 S. Ct. 367 (1948); *Counts,* at 64.

Fourth Amendment and Const. art. 1, § 7.[4] The smell of burning marijuana, when detected by those qualified to know that odor, is sufficiently distinctive to create probable cause to search or arrest for marijuana possession. *State v. Hammond,* 24 Wn. App. 596, 598–99, 603 P.2d 377 (1979); *State v. Compton,* 13 Wn. App. 863, 865, 538 P.2d 861 (1975); 2 W. LaFave, *Search and Seizure* § 3.6(b), at 36–37 (2d ed. 1987); *see also Johnson v. United States,* 333 U.S. 10, 13, 92 L. Ed. 436, 68 S. Ct. 367 (1948). The court found the officers' testimony clearly demonstrated they had experience in identifying the odor of marijuana and they also had received formal training in making such identifications. *See State v. Matlock,* 27 Wn. App. 152, 155–56, 616 P.2d 684 (1980). Consequently, the officers possessed probable cause to either search or arrest for marijuana possession upon smelling the odor of burning marijuana. The State maintains, and the court so found, that an exigency existed because the officers needed to ensure the evidence was not totally destroyed, *i.e.,* consumed by being smoked. We disagree.

In *Payton,* the rule allowing warrantless home arrests upon a showing of probable cause and exigent circumstances was expressly limited to *felony* arrests. *See, e.g., Welsh v. Wisconsin,* 466 U.S. 740, 749 n.11, 80 L. Ed. 2d 732, 104 S. Ct. 2091 (1984); *Payton,* 445 U.S. at 574, 588. The Court in *Welsh,* 466 U.S. at 750–53, observed that the State's interest in making a warrantless home arrest only outweighs an individual's interest in being secure from such an invasion where serious crimes are involved. Conse-

---

[4]Our Supreme Court has recognized five different exigent circumstances: (1) hot pursuit; (2) fleeing suspect; (3) danger to arresting officer or the public; (4) mobility of a vehicle; (5) mobility or destruction of the evidence. *Counts,* at 60. Furthermore, in *State v. Terrovona,* 105 Wn.2d 632, 644, 716 P.2d 295 (1986) (citing *Dorman v. United States,* 435 F.2d 385, 392–93 (D.C. Cir. 1970)), the court enumerated six additional elements: (1) a grave offense, particularly a crime of violence, is involved; (2) the suspect is reasonably believed to be armed; (3) there is reasonably trustworthy information that the suspect is guilty; (4) there is strong reason to believe that the suspect is on the premises; (5) the suspect is likely to escape if not swiftly apprehended; and (6) the entry is made peaceably.

quently, under normal circumstances, where officers merely have probable cause to believe a misdemeanor is being, or has been, committed, "application of the exigent–circumstances exception in the context of a home entry should rarely be sanctioned . . ." *Welsh,* 466 U.S. at 753. As Justice Brennan, writing for the Court, explained:

> Our hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor. Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.

(Footnote and citation omitted.) *Welsh,* 466 U.S. at 750. He further noted that consideration of the gravity of an offense in determining whether exigent circumstances exist to make a warrantless home arrest

> is not a novel idea. Writing in concurrence in *McDonald* v. *United States,* 335 U. S. 451 [93 L. Ed. 153, 69 S. Ct. 191] (1948), Justice Jackson explained why a finding of exigent circumstances to justify a warrantless home entry should be severely restricted when only a minor offense has been committed:
>
> > . . . Whether there is reasonable necessity for a search without waiting to obtain a warrant certainly depends somewhat upon the gravity of the offense thought to be in progress as well as the hazards of the method of attempting to reach it. . . . It is to me a shocking proposition that private homes, even quarters in a tenement, may be indiscriminately invaded at the discretion of any suspicious police officer engaged in following up offenses that involve no violence or threats of it. While I should be human enough to apply the letter of the law with some indulgence to officers acting to deal with threats or crimes of violence which

endanger life or security, it is notable that few of the searches found by this Court to be unlawful dealt with that category of crime.

*Welsh,* 466 U.S. at 750–51. Given the above reasoning, the *Welsh* Court held exigent circumstances did not exist to make a warrantless home arrest for drunk driving, despite the fact certain destruction of evidence would occur (*i.e.,* the defendant's blood alcohol level would dissipate) while the police obtained a warrant. Because that crime, an infraction under Wisconsin law, was relatively minor, the State's interest did not justify such an entry.

In the instant case, we likewise hold exigent circumstances did not exist to justify the officers' warrantless entry and arrest of Mr. Ramirez while in his hotel room. The offenses for which the officers here had probable cause to arrest (use or possession of marijuana) were misdemeanors. Thus, using the *Welsh* analysis, we find the State's interest in preventing these crimes, though important, is not of sufficient magnitude to justify this warrantless entry and arrest under the Fourth Amendment. *See State v. Chrisman,* 100 Wn.2d 814, 821–22, 676 P.2d 419 (1984). Likewise, given the stricter protection afforded by Const. art. 1, § 7, that provision mandates the same conclusion.[5] The "bright line" is at the home's threshold. *Payton,* 445 U.S. at 590.

Moreover, *Johnson v. United States, supra,* is directly on point. There, law enforcement agents in a hotel hallway identified the smell of burning opium emanating from a particular room. The agents knocked on the door and were admitted without first obtaining consent. Although the Court noted that odor of burning opium gave the officers probable cause to arrest, it nonetheless held that the destruction of the opium by consumption was an insuffi-

---

[5]Because we conclude exigent circumstances did not exist sufficient to justify a warrantless entry of room 305, we do not decide whether the greater protections afforded by Const. art. 1, § 7 may impose an absolute bar on warrantless arrests in residential–like premises for misdemeanors as other states have held. *See, e.g., State v. Guertin,* 190 Conn. 440, 461 A.2d 963, 970 (1983).

cient basis upon which to justify a warrantless entry to effectuate the arrest. In reversing the conviction, the Court observed:

> There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with. But this is not such a case. No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to by–pass the constitutional requirement. No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction, except perhaps the fumes which we suppose in time would disappear. But they were not capable at any time of being reduced to possession for presentation to court. The evidence of their existence before the search was adequate and the testimony of the officers to that effect would not perish from the delay of getting a warrant.
>
> If the officers in this case were excused from the constitutional duty of presenting their evidence to a magistrate, it is difficult to think of a case in which it should be required.

*Johnson,* 333 U.S. at 14–15. Given the holdings in *Johnson* and *Welsh,* exigent circumstances did not exist to justify this warrantless arrest under either the Fourth Amendment or Const. art. 1, § 7.[6]

---

[6]Justice Jackson's observations in *Johnson,* 333 U.S. at 13–14, are especially relevant in this context where the suspected offenses were misdemeanors:

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is,

Notwithstanding, the State contends an arrest warrant was not needed to enter and effectuate the arrest because RCW 10.31.100(1)[7] independently gave the officers the authority to make the warrantless arrest in the room since they had probable cause to believe a crime involving the open "use or possession of cannabis" was taking place. This assertion is not well taken. In *Payton v. New York, supra,* the issue was whether a similar New York statute permitting warrantless entry into a private residence to effectuate a routine felony arrest was constitutional. In holding it was not, the Court explained:

> the Second Circuit recently summarized its position:
>> "To be arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home. *This is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is*

of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.

(Footnotes omitted.)

[7]Former RCW 10.31.100 provides in part: "A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer, except as provided in subsections (1) through (5) of this section.

"(1) Any police officer having probable cause to believe that a person has committed or is committing a misdemeanor or gross misdemeanor, . . . *involving the use or possession of cannabis shall have the authority to arrest the person.*" (Italics ours.)

Although Mr. Ramirez contends he was not in the "presence" of the officers for purposes of misdemeanor arrest because the closed door intervened between the officers and the illegal activity, such a contention is not well taken. RCW 10.31.100(1) permits officers to arrest an individual, where the officers have probable cause to believe the individual is using marijuana, regardless of whether the offense is taking place within the officers' "presence." Nonetheless, this offense was being perpetrated in the officers' "presence" because the officers were able to directly detect its commission through one of their unenhanced senses, *i.e.,* their sense of smell. 2 W. LaFave § 5.1(c), at 405–06.

*accomplished under statutory authority and when probable cause is clearly present." United States v. Reed, 572 F.2d 412, 423 (1978), cert. denied sub nom. Goldsmith v. United States, 439 U. S. 913 [58 L. Ed. 2d 259, 99 S. Ct. 283 (1978)].*

*We find this reasoning to be persuasive and in accord with this Court's Fourth Amendment decisions.*

(Italics ours.) *Payton,* 445 U.S. at 588–89.

■ Likewise, RCW 10.31.100 cannot give officers authority they are not otherwise permitted under the Fourth Amendment and Const. art. 1, § 7. Rather, that statute merely provides officers who possess probable cause to believe a person is committing a marijuana offense with the authority to make an arrest of that individual without first obtaining an arrest warrant. However, that provision contemplates the warrantless arrest (if not the offense itself) will occur in a public place. A seizure or arrest in a public place or an automobile involves no invasion of a legitimate expectation of privacy and is valid assuming probable cause exists to make such an arrest. *See Payton,* 445 U.S. at 587; *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 354, 50 L. Ed. 2d 530, 97 S. Ct. 619 (1977); *United States v. Martinez–Miramontes,* 494 F.2d 808 (9th Cir.), *cert. denied,* 419 U.S. 897 (1974); *Dorman v. United States,* 435 F.2d 385, 389 (D.C. Cir. 1970). RCW 10.31.100 does not, however, provide an independent exception to the warrant requirement that would, of itself, justify an officer's crossing of an otherwise constitutionally protected threshold to make a warrantless arrest in a residential premise.[8] To so hold would violate not only the Fourth Amendment as interpreted in *Payton,* but also Const. art. 1, § 7.

Because the officers' warrantless entry into room 305 vio-

---

[8]*Cf. State v. Dalton,* 43 Wn. App. 279, 286, 716 P.2d 940, *review denied,* 106 Wn.2d 1010 (1986) (RCW 10.31.100 allows officer to make warrantless arrest in individual's home after a consensual entry where individual used residence as a commercial center to sell drugs and thus possessed no legitimate expectations of privacy in premises); *State v. Dresker,* 39 Wn. App. 136, 140–41, 692 P.2d 846 (1984) (RCW 10.31.100 did not provide officers with basis to make warrantless arrest in residence because they did not possess probable cause to arrest).

lated not only article 1, section 7, but also the Fourth Amendment, the evidence therein was illegally seized. The officers should have sought a search warrant.[9] Mr. Ramirez' motion to suppress should have been granted.

We reverse the conviction.

THOMPSON, A.C.J., and GREEN, J., concur.

---

[9]The result would be the same under these facts if the officers believed a felony was being committed.