904 P.2d 290 (1995)
127 Wash.2d 836
The STATE of Washington, Respondent,
v.
Nicole Faye CARTER, Petitioner.
No. 61922-1.
Supreme Court of Washington, En Banc.
October 26, 1995.
*291 Kathleen A. Barry, Seattle, Washington Appellate Defender, Colleen E. O'Connor, Seattle, Nielsen & Acosta, Eric Nielsen, Seattle, for petitioner.
Norm Maleng, King County Prosecutor, Jennifer Gilman, Deputy, Francis Zavatsky, Deputy, Theresa Fricke, Deputy, Michele Hauptman, Deputy, Seattle, for respondent.
SMITH, Justice.
Petitioner Nicole Faye Carter seeks review of a decision of the Court of Appeals, Division One, which upheld an order of the King County Superior Court suppressing evidence of cocaine seized by police during a warrantless search of a motel room in the presence of Petitioner. We granted review. We affirm.

QUESTION PRESENTED
The question presented in this case is whether under Const. art. I, § 7, a defendant has standing to challenge the warrantless search of a motel room and seizure of a controlled substance, cocaine, which the defendant is charged with possessing when the defendant claims to have been merely a visitor in the room.

STATEMENT OF FACTS
Petitioner Nicole Faye Carter was charged by information in the King County Superior Court with the offenses of delivery of a controlled substance, cocaine, and possession with intent to deliver a controlled substance, cocaine, in violation of the Uniform Controlled Substances Act, RCW 69.50.401(a)(1)(i).
The charges arose from a "buy-bust" operation conducted by Seattle Police on March 15, 1991. Plainclothes officer Lawrence Jackson went to the parking lot of the Sun Rise Motel on Martin Luther King, Jr. Way South in Seattle that evening to pose as a narcotics buyer. As he got out of his automobile, Ms. Carter approached him and said "soup," a term the officer knew was street vernacular for "cocaine." He asked her if she had some. She answered "yeah, come on." Another woman, Sonya Smothers, was with Ms. Carter. Petitioner Carter and Ms. Smothers then led Officer Jackson to a room in the motel. Once inside, Ms. Smothers took from her shirt a small bottle containing several rocks of cocaine. She removed one rock and handed it to Officer Jackson. He handed her a pre-marked twenty-dollar bill and took the cocaine.
Officer Jackson left the motel room and signaled to standby officers that he had made a "good buy." He described Ms. Carter and Ms. Smothers to the officers and told them the women were still in the motel room. Four officers on the observation and arrest teams responded immediately and headed toward the room with weapons drawn. As they approached the room, an unidentified woman opened the door and came out into the hallway. When she saw the officers, she slammed the door behind her and tried to run away. One of the officers detained her in the hallway while the others announced "Seattle Police" and forced the door open. They found three women inside, including Petitioner Carter and Ms. Smothers. Ms. Smothers was holding a vial of crack cocaine and the twenty-dollar bill Officer Jackson had given her.
Petitioner Carter was later charged in the King County Superior Court with delivery of a controlled substance, cocaine, and possession with intent to deliver a controlled substance. On September 13, 1991, she moved to suppress evidence obtained from the motel room because it was seized by police during a warrantless search. The King County Superior Court, the Honorable Nancy A. Holman, denied the motion, finding that exigent circumstances justified the warrantless entry.
After a jury trial before the Honorable R. Joseph Wesley, Petitioner was found "guilty" on both counts on November 20, 1991. She was sentenced on December 27, 1991 to 41 months on Count I and 41 months on Count II, with credit of 173 days for time served. On May 23, 1994, the Court of Appeals affirmed the judgment of the trial court. It did not reach the issue of exigent circumstances justifying the warrantless entry, but simply concluded that Ms. Carter did not have standing to challenge the search. Petitioner *292 now seeks review by this court. We granted review on December 7, 1994.

DISCUSSION
Petitioner Carter's challenge to the warrantless search of the motel room was based on United States Supreme Court cases holding that police may not enter a residence without a warrant in the absence of consent or exigent circumstances.[1] The State claimed there were exigent circumstances surrounding the search and arrest. It argued there was great risk that the drugs would be destroyed by persons in the motel room who were alerted by noises from the slamming door and the hallway scuffle. The Court of Appeals did not address this issue, but concluded only that Petitioner did not have standing to challenge the search.
Petitioner Carter contends the Court of Appeals should not have reached the standing issue because the State did not challenge her standing in the trial court. The court nonetheless determined it could consider the issue as an alternate basis for affirming the decision of the trial court.[2]
In a civil case a trial court's judgment will be upheld on any ground established by the pleadings and supported by the proof even though that ground may not have been considered by the trial court.[3] However, "there are obvious due process problems in affirming a trial court ruling in a criminal proceeding on an alternative theory against which the defendant has had no opportunity to present an argument."[4]
The question of automatic standing to challenge a search is a proper one for consideration in this case. Petitioner responded to the State's brief raising that issue in the Court of Appeals. She has thus had opportunity to present her argument on it. Even if Petitioner did not have automatic standing, she might possibly still be able to challenge the search. A defendant who lacks automatic standing may still possess a legitimate expectation of privacy in the place searched or the thing seized, and on that basis be able to challenge the search or seizure.[5] In Combs v. United States,[6] the United States Supreme Court remanded for an evidentiary hearing to permit both parties to present evidence on the issue of standing which respondent government raised for the first time on appeal. Petitioner contends the same remedy should be ordered if this court determines she did not have automatic standing.
The United States Court of Appeals for the Sixth Circuit in Combs affirmed the defendant's conviction on the ground that he did not assert any possessory or proprietary claim to the searched premises and therefore did not have standing to challenge the search and seizure. The Supreme Court observed it was understandable that the defendant did not make that assertion because the government did not challenge his standing either at the suppression hearing or at trial.[7] Since the record was "virtually barren of the facts" necessary to determine a privacy interest, the court remanded the case to permit the trial court to make such a factual determination.[8]
This case is distinguishable from Combs because Petitioner Carter testified at trial fully relating the circumstances. She testified she was in the motel room to pick up Ms. Smothers on their way to meet a date and that she was watching television while Ms. *293 Smothers and another woman left the room and returned with Officer Jackson. When asked on cross-examination why Ms. Smothers was in the room, she replied, "I really couldn't tell you." Even assuming Ms. Smothers actually lived in the motel room, at most it could be inferred that Petitioner was legitimately in the room as a casual visitor. Legitimate presence, however, is not a sufficient basis for asserting a Fourth Amendment right.[9] The Court of Appeals concluded that Petitioner's "expectation of privacy, if any, was not objectively reasonable."[10] Considering her own testimony, remanding for an evidentiary hearing on that issue would not likely achieve a different result than her conviction.

Automatic Standing
"`[C]apacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection... has a legitimate expectation of privacy in the invaded place.'"[11] In Jones v. United States,[12] the United States Supreme Court recognized a limited exception to this rule for cases in which a defendant is charged with a possessory offense. In such cases, a defendant legitimately on the premises may challenge the search or seizure even though the defendant did not have a privacy interest in the premises searched.[13]
The "automatic standing" rule was intended to prevent the government from arguing at a suppression hearing that a defendant did not possess the substance and thus had no Fourth Amendment protected interests, and then contrarily asserting at trial that the defendant was guilty of possessing the substance.[14] The court in Jones was also concerned about the possibility of self-incrimination, where requiring a defendant at a suppression hearing to establish standing by admitting possession of the items seized would provide evidence for the prosecution to use at trial.[15]
Following Jones, this court stated in State v. Michaels that "[t]he reasoning of [the Jones] opinion commends itself to this court."[16] It recognized that requiring a defendant in a suppression hearing to admit possession of items seized would result in confession by the defendant of an element of the possessory offense. The court in Michaels did not analyze the state constitution separately from the federal constitution, but treated the two provisions as coextensive, holding that the defendant had standing under both the state and federal constitutions.[17]
When the United States Supreme Court ruled in Simmons v. United States[18] that a claim by a defendant in a pretrial hearing of a privacy interest in the place of seizure cannot be admitted at trial to establish guilt, it changed the federal rule. The court stated that, as a matter of public policy, defendants should not be deterred from challenging a search and seizure for fear that their suppression hearing testimony would be used to link them to the contraband.[19] Thus, after Simmons, the reasons which led to the rule of automatic standing seemed no longer to be of consequence.
Recognizing that Simmons effectively eliminated the problem of self-incrimination by defendants, the Supreme Court in United *294 States v. Salvucci[20] overruled Jones and abandoned the automatic standing rule. It held that defendants charged with possessory offenses must establish an "expectation of privacy in the area searched."[21] After Salvucci, this court considered whether automatic standing was independently available under our state constitution. In State v. Simpson,[22] the plurality opinion declared adherence to the automatic standing rule a matter of state constitutional law. It said this "rule is already established under our state constitution and has served our state well for 17 years" and declined to abandon it.[23]
The defendant in Simpson was arrested under a warrant for forgery after he parked in front of his residence and alighted from the truck he was driving. The officers later obtained a key to the truck from his property box at the jail. They returned with it to the arrest scene to impound the truck because it was improperly licensed. Upon unlocking the truck, they checked its vehicle identification number (VIN) and learned the vehicle was stolen. The defendant was then charged with possession of stolen property.
The trial court granted the defendant's motion to suppress evidence produced by "seizure" of the VIN, finding it was the fruit of an unconstitutional search. The plurality decision by this court affirmed the decision of the trial court.[24] It determined a defendant has "automatic standing" to challenge a search and seizure if (1) the charged offense involves possession as an essential element, and (2) the defendant was in possession of the subject matter at the time of the search or seizure.[25] Applying this test, it concluded the defendant was entitled to full protection of the automatic standing doctrine. It held that search for the VIN inside a locked truck when the defendant was in custody violated both the federal and state constitutions.[26]
In State v. Zakel,[27] this court declined to decide "whether our state constitution requires adherence to the automatic standing doctrine," finding it unnecessary for resolution of that case. The Court of Appeals in Carter interpreted the statement in Zakel to support the proposition that "`there is no authority in Washington binding this court [of Appeals] to apply automatic standing as a matter of state constitutional law.'"[28]
Respondent State urges the court in this case to affirm the Court of Appeals and reject the reasoning of the Simpson plurality, contending there is no legal or policy basis for upholding automatic standing under article I, § 7 of the Washington Constitution.
Petitioner maintains that abrogating the automatic standing rule would prevent defendants from asserting their privacy interest because of the possibility that statements made at the suppression hearing would later be used to incriminate them through impeachment. In relying on this rationale stated by the plurality in Simpson, Petitioner Carter seeks to equate the constitutional guaranty against self-incrimination with protection from impeachment. But the risk of impeachment was not part of the self-incrimination concern which formed the basis for *295 automatic standing.[29] The United States Supreme Court has stated that "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury."[30] The automatic standing doctrine was never intended to confer upon defendants a license to make false representations on the witness stand.[31]
Petitioner contends the automatic standing doctrine provides a rule more easily understood than the "legitimate expectation of privacy" test, and that offenders' entitlement to it deters illegal police behavior. Petitioner's reasoning is not persuasive. Adopting a blanket rule that a defendant charged with a possessory offense will always have a privacy interest promotes "blind adherence" to the assumption that possession of a seized good is an adequate measure of Fourth Amendment rights.[32] The trial court can determine whether a due process violation exists on a case-by-case basis in motions to suppress evidence under CrR 3.6.[33]

Privacy Interest
Petitioner contends our state law on search and seizure grants broader protection to Washington citizens than does federal law. This court has held that Const. art. I, § 7 may be interpreted to provide greater protection to individual privacy interests than parallel provisions of the United States Constitution.[34] The nonexclusive criteria for making this determination are outlined in State v. Gunwall[35] and have been adequately addressed by the parties in this case.
The differences between Const. art. 1, § 7 and the Fourth Amendment are evident upon comparison of the wording of the two provisions.[36] To determine whether a search necessitating a warrant has occurred under the Fourth Amendment, the inquiry is whether the defendant possessed a "reasonable expectation of privacy."[37] Violation of a *296 right of privacy under Const. art. 1, § 7 may occur when the government has unreasonably intruded into a person's "private affairs."[38] Under the facts of this case, however, any distinction between the state and federal provisions is of no consequence.
"Business transactions with the public are not `private affairs'."[39] The evidence shows that Petitioner Carter was in the motel room engaged in a commercial transaction, the sale and delivery of a controlled substance, cocaine. Her action does not then come under the plain meaning of "private affairs." Besides, she waived any right of privacy by willingly admitting a stranger into the motel room to conduct a drug transaction.[40]
Certainly Petitioner did not have a reasonable expectation of privacy within the scope of the Fourth Amendment. There is no reasonable expectation of privacy when the occupant of a motel room invites outsiders into the room to transact illegal business.[41] Petitioner Carter's business in the motel room was thus entitled to "no greater sanctity" than if it were conducted in the streets.[42]
Assuming the truthfulness of Petitioner's own testimony at trial, her "private affairs" were not involved. She testified she was upset because Ms. Smothers was not ready to go out when Petitioner came to the motel room to pick her up. Petitioner was thus in the room only temporarily until Ms. Smothers was ready to leave with her. Petitioner also testified she had no idea of the identity of a third woman in the room. This negates any claim she may assert that the motel room was her private domain.
Under the facts of this case, it is not necessary to consider whether the state constitution allows greater protection than its federal counterpart. Application of an independent state constitutional analysis does not result in exclusion of the seized evidence. The result under either the state or federal inquiry would be the same.
Under the facts of this case and our prior decisions, we conclude that Petitioner Carter did have automatic standing to move for suppression of the evidence obtained through a warrantless search of the motel room when she was present.[43] Although the automatic standing rule may be subject to question under United States v. Salvucci,[44] this is not the case for resolving the question.
Our review of the record leads to the conclusion that, assuming Petitioner Carter had standing to move for suppression of the evidence, there were exigent circumstances which justified search of the motel room without a warrant. This was the finding of the trial court, with which we agree.

SUMMARY AND CONCLUSIONS
Under our plurality decision in State v. Simpson, 95 Wash.2d 170, 622 P.2d 1199 (1980), a defendant charged with a possessory offense is entitled to "automatic standing." This doctrine eliminates the requirement of showing a legitimate expectation of privacy before the defendant can challenge a search or seizure. It was originally adopted to guard against the risk of self-incrimination by the defendant who, in order to establish standing at the suppression hearing, would have to admit possession of the seized evidence which could later be used as admission of guilt at trial. The United States Supreme Court abandoned the automatic standing doctrine in United States v. Salvucci, supra, based on a ruling in Simmons v. United States, supra, that a defendant's pretrial testimony may no longer be used as substantive evidence at trial. We have not followed that *297 decision in this case and decline to overrule Simpson until the issue is more adequately brought before us.
Petitioner Carter's contention that she has automatic standing to challenge the warrantless entry into the motel room was rejected by the Court of Appeals, which chose not to follow this court's plurality decision in Simpson. We do not agree with the Court of Appeals entirely, but affirm its decision nevertheless.
Petitioner Carter did not persuasively argue that she had a "reasonable expectation of privacy" within the scope of the Fourth Amendment or that her "private affairs" were invaded in violation of Const. art. I, § 7. Her testimony at trial that she was in the motel room only to pick up its occupant, Ms. Sonya Smothers, negates any claim she might have to a privacy interest in the motel room. Under the facts of this case it is not necessary to determine whether the Washington Constitution provides a broader protection in the area of search and seizure than its parallel federal provision because the result under either constitution would be the same.
Petitioner Carter did have standing to move for suppression of the evidence. This is contrary to the conclusion reached by the Court of Appeals. However, we agree with the trial court that there were exigent circumstances justifying entry of the motel room by Seattle police officers without a warrant. Petitioner does not challenge this finding by the trial court, but relies instead upon the "automatic standing" issue. We disagree with the conclusion of the Court of Appeals on that issue, but, at the same time, affirm its decision for another reason.
We affirm the decision of the Court of Appeals which upheld the trial court ruling which denied Petitioner Nicole Faye Carter's motion to suppress evidence of the controlled substance, cocaine, seized by police during a warrantless search. In doing so, we affirm the ruling of the trial court that exigent circumstances existed for the search without a warrant.
DURHAM, C.J., and DOLLIVER, GUY and TALMADGE, JJ., concur.
ALEXANDER, Justice (dissenting).
I respectfully dissent from the majority opinion. I do so because, in my judgment, the trial court erred in denying Nicole Carter's motion to suppress the cocaine seized by the Seattle police officers. The majority's conclusion that the trial court did not err in denying Carter's motion was based on its determination that the trial court correctly held that the warrantless search of the motel room was justified by exigent circumstances.
Despite the significance of the determination that exigent circumstances justified the warrantless search and seizure, that issue received scant attention in the majority opinion. The bulk of the opinion is devoted to an analysis of an issue that the trial court did not confront, but which was pivotal to the Court of Appeals decisionwhether Carter had standing to challenge the warrantless search. The majority, noting our decision in State v. Simpson, 95 Wash.2d 170, 622 P.2d 1199 (1980), eventually concludes, albeit somewhat grudgingly, that under our state's constitution, article 1, section 7, Carter had automatic standing to challenge the search and seizure, and that the Court of Appeals erred in upholding the trial court's denial of the suppression motion on the basis that she was without standing. That conclusion, with which I agree, is then followed by the succinct holding that exigent circumstances justified a warrantless search of the motel room.
The latter conclusion is simply not supportable. Indeed, the majority engages in no discussion or analysis of the so-called exigent circumstances that ostensibly justified the warrantless entry into the motel room. It simply says that this was a finding of the trial court "with which we agree." Majority, at 296. It also indicates that the Petitioner did not challenge that finding. Nothing could be further from the truth. In her brief to the Court of Appeals, Carter assigned error to the trial court's determination that exigent circumstances justified the warrantless search, and she devoted a substantial portion of her brief to a discussion of that issue. While it is true that Carter did not feature that issue in her petition to this court for review of the Court of Appeals decision affirming her conviction, that is totally understandable *298 in light of the fact that the Court of Appeals did not base its decision on that issue. Rather, as we have observed, that court affirmed the trial court on the basis that Carter lacked standing to challenge the search.
A warrantless search may, of course, be justified if exigent circumstances are present. State v. Counts, 99 Wash.2d 54, 60, 62, 659 P.2d 1087 (1983). In Counts, we identified five circumstances which could be determined to be exigent: "(1) hot pursuit; (2) fleeing suspect; (3) danger to arresting officer or to the public; (4) mobility of the vehicle; and (5) mobility or destruction of the evidence." Counts, 99 Wash.2d at 60, 659 P.2d 1087 (citations omitted). None of these circumstances are present here. The police officers who forcibly entered the motel room were not pursuing a fleeing suspect into that room. Nor was there any showing that there were sounds emanating from the room, which would indicate that someone was attempting to flee or destroy evidence. Finally, no officer was endangered by any activity that preceded their entry into the motel room. The most that can be said is that when the four police officers approached the motel room, a woman who had come out into the hallway saw them, slammed the door, and tried to run away from the room. These circumstances cannot be considered exigent and do not justify entry into the room without a warrant.
I would, therefore, reverse the trial court and the Court of Appeals, and would remand for entry of an order suppressing the cocaine and for retrial.
JOHNSON and MADSEN, JJ., and UTTER, J. Pro Tem., concur.
NOTES
[1] See, e.g., Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).
[2] State v. Carter, 74 Wash.App. 320, 324 n. 2, 875 P.2d 1 (1994) (citing State v. Grundy, 25 Wash. App. 411, 415-16, 607 P.2d 1235 (1980), review denied, 95 Wash.2d 1008 (1981)).
[3] See Adcox v. Children's Orthopedic Hosp. & Med. Ctr., 123 Wash.2d 15, 32, 864 P.2d 921 (1993) (citing LaMon v. Butler, 112 Wash.2d 193, 200-01, 770 P.2d 1027, cert. denied, 493 U.S. 814, 110 S.Ct. 61, 107 L.Ed.2d 29 (1989)).
[4] State v. Adamski, 111 Wash.2d 574, 580, 761 P.2d 621 (1988).
[5] See United States v. Salvucci, 448 U.S. 83, 86-87, 100 S.Ct. 2547, 2549-50, 65 L.Ed.2d 619 (1980).
[6] 408 U.S. 224, 92 S.Ct. 2284, 33 L.Ed.2d 308 (1972).
[7] Combs, Id. at 227, 92 S.Ct. at 2285.
[8] Id. at 227-28, 92 S.Ct. at 2285-86.
[9] Rakas v. Illinois, 439 U.S. 128, 142, 99 S.Ct. 421, 429, 58 L.Ed.2d 387 (1978).
[10] Carter, 74 Wash.App. at 329, 875 P.2d 1.
[11] Rakas, 439 U.S. at 143, 99 S.Ct. at 430.
[12] 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233 (1960).
[13] Jones, 362 U.S. at 263-65, 80 S.Ct. at 732-33.
[14] Id. at 263-64, 80 S.Ct. at 732-33.
[15] Id. at 261-64, 80 S.Ct. at 730-32.
[16] State v. Michaels, 60 Wash.2d 638, 646, 374 P.2d 989 (1962).
[17] Id. at 646-47, 374 P.2d 989. The court recognized the protection provided by the federal and state constitutions against unreasonable searches and seizures, but made no mention of Const. art. 1, § 7. It relied solely on the federal law analysis in Jones v. United States, supra.
[18] 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).
[19] Id. at 389-94, 88 S.Ct. at 973-76.
[20] 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).
[21] Id. at 92-93, 100 S.Ct. at 2553-54.
[22] 95 Wash.2d 170, 622 P.2d 1199 (1980).
[23] Id. at 181, 622 P.2d 1199.
[24] The plurality (by Williams, J.) carried four signatures. A concurring opinion by Utter, C.J. stated it was unnecessary to reach the state constitutional issue because the defendant had a legitimate expectation of privacy in the item seized and could therefore challenge the seizure on Fourth Amendment grounds. A dissent (by Horowitz, J.) carried three signatures.
[25] Simpson, 95 Wash.2d at 181, 622 P.2d 1199.
[26] Id. at 192, 622 P.2d 1199.
[27] 119 Wash.2d 563, 571, 834 P.2d 1046 (1992).
[28] Carter, 74 Wash.App. at 325, 875 P.2d 1 (quoting State v. Jones, 68 Wash.App. 843, 854, 845 P.2d 1358, review denied, 122 Wash.2d 1018, 863 P.2d 1352 (1993)). The court in Jones treated Fourth Amendment case law as dispositive because the defendant had not provided "a reasoned argument explaining why our state constitution compels retention of automatic standing". Jones, 68 Wash.App. at 854, 845 P.2d 1358. In the case of Petitioner Carter, however, the Court of Appeals did decide the state constitutional issue.
[29] As the court in Salvucci stated: "[T]he issue presented here is quite different from the one of whether "use immunity" extends only through the Government's case-in-chief, or beyond that to the direct and cross-examination of a defendant in the event he chooses to take the stand. That issue need not be and is not resolved here, for it is an issue which more aptly relates to the proper breadth of the Simmons privilege, and not to the need for retaining automatic standing. Salvucci, 448 U.S. at 94, 100 S.Ct. at 2554.

Simmons did not hold that a defendant's testimony at a suppression hearing was inadmissible because it was elicited through a grant of immunity. Simmons merely held that suppression hearing testimony is not admissible at trial "on the issue of guilt". Simmons, 390 U.S. at 394, 88 S.Ct. at 976.
[30] Harris v. New York, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971).
[31] United States v. Kahan, 415 U.S. 239, 243, 94 S.Ct. 1179, 1180, 39 L.Ed.2d 297 (1974) ("The protective shield of Simmons is not to be converted into a license for false representations....").
[32] See Salvucci, 448 U.S. at 92-93, 100 S.Ct. at 2553-54.
[33] CrR 3.6 provides:

"At the conclusion of a hearing, upon a motion to suppress physical, oral or identification evidence the trial court shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) the court's findings as to the disputed facts; and (4) the court's reason for the admissibility or inadmissibility of the evidence sought to be suppressed."
[34] State v. White, 97 Wash.2d 92, 110, 640 P.2d 1061 (1982); State v. Chrisman, 100 Wash.2d 814, 818, 676 P.2d 419 (1984); State v. Gunwall, 106 Wash.2d 54, 64-67, 720 P.2d 808, 76 A.L.R. 4th 517 (1986).
[35] 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R. 4th 517 (1986). Gunwall provides the following criteria for determining whether the state constitution provides greater protection of defendants' privacy interest than its federal counterpart: (1) textual language; (2) differences in texts; (3) constitutional and common law history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern. Gunwall, at 61-62, 720 P.2d 808.
[36] The fourth amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article I, § 7 of the Washington Constitution provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."
[37] Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
[38] State v. Myrick, 102 Wash.2d 506, 510, 688 P.2d 151 (1984).
[39] State v. Hastings, 119 Wash.2d 229, 233, 830 P.2d 658 (1992).
[40] See State v. Dalton, 43 Wash.App. 279, 284-85, 716 P.2d 940, review denied, 106 Wash.2d 1010 (1986).
[41] See Lewis v. United States, 385 U.S. 206, 211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966).
[42] See, Lewis. See also Hastings, 119 Wash.2d at 232-33, 830 P.2d 658.
[43] See State v. Michaels, 60 Wash.2d 638, 374 P.2d 989 (1962); State v. Simpson, 95 Wash.2d 170, 622 P.2d 1199 (1980).
[44] 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).